2012 OK 43

**U.S. BANK, N.A., as Trustee, for CREDIT SUISSE FIRST BOSTON HEAT 2005–4, Plaintiff/Appellee,**

v.

**John W. ALEXANDER, III, and Lisa Alexander, Defendants/Appellants,**

and

**Citifinancial Services, Inc., Defendant.**

**No. 109,648.**

Supreme Court of Oklahoma.

May 1, 2012.

Sally E. Garrison, Baer, Timberlake, Coulson and Cates, P.C., Oklahoma City, Oklahoma; Mark Edward Hardin, Tulsa, Oklahoma; Kari Y. Hawkins, Oklahoma City, Oklahoma, for Plaintiff/Appellee.

Michael R. Warkentin, Michael R. Warkentin, P.C., Norman, Oklahoma, for Defendants/Appellants.

COMBS, J.

¶ 1 On May 10, 2005, John W. Alexander, III (Alexander), executed a note to MILA, Inc., DBA Mortgage Investment Lending Associates, Inc. (MILA), and a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for MILA and its successors and assigns. The mortgage also contains language, identifying MERS as the mortgagee under this security instrument.

¶ 2 Wells Fargo Bank, N.A. (Wells Fargo), filed a foreclosure petition on July 23, 2009, alleging appellant defaulted on the note for installments beginning April 1, 2009.[1] The petition further states Wells Fargo was the present holder of the note and mortgage, and Wells Fargo took the note and mortgage for good and valuable consideration from the original lender. A copy of the note and part of the mortgage was attached to the original petition. The note attached to the original petition contained no indorsements.

¶ 3 On October 6, 2009, an Order Granting Motion for Substitution of Plaintiff and Modification of Caption was filed in response to a Motion filed that same date. Appellee, U.S. Bank National Association, as Trustee, for Credit Suisse First Boston HEAT 2005-4 (Appellee) was substituted in place of Wells Fargo. The motion stated Wells Fargo had subsequently assigned all of its rights in the mortgage to Appellee. Appellee also filed, on October 6, 2009, its First Amended Petition. This amended petition re-alleged all of the allegations of Wells Fargo's petition and identified additional defendants as parties who may have an interest in the property. Appellee attached to the amended petition, a copy of the same unindorsed note and mortgage originally executed by the Appellant John W. Alexander, III, in 2005.

¶ 4 Appellants (John W. Alexander, III, and Lisa Alexander) never answered the petition and a judgment was entered against Appellants on April 19, 2010. One day later, on April 20, 2010, Appellants' counsel made an entry of appearance and the judgment was vacated by order of May 19, 2010.

¶ 5 On June 8, 2010, Appellee filed a motion for summary judgment. Appellee claims, in this motion for summary judgment, it is the holder of the note and mortgage, and that Appellants have been in constant default since the July 1, 2009, installment payment was due. Appellee further alleges Appellants have made no tender sufficient to reinstate the loan, and there has been no extension or renewal of the note. Appellee attached a copy of the same unindorsed note and parts of the mortgage included in its First Amended Petition. It also attached an affidavit and assignment of real estate mortgage. The affidavit was executed by a Vice President Loan Documentation of Appellee and generally affirms the allegations in the motion. The assignment of real estate mortgage reflects an execution date of August 13, 2009, but made effective March 1, 2005.[2] This assignment was from MERS (as nominee for the lender) to Appellee of the real estate mortgage "**together with the note, debts and claims thereby secured.**" (emphasis added)

¶ 6 Appellants filed an objection to Appellee's motion for summary judgment and later filed a supplement to the objection. Appellants challenged certain comments in Wells Fargo's motion to substitute which stated Wells Fargo subsequently assigned its rights under the mortgage to Appellee after the filing of the original petition on July 23, 2009. The assignment of real estate mortgage executed August 13, 2009, is from MERS to Appellee. This document, it is asserted by Appellee, provides evidence of the attempt to assign the note. **The assignment of real estate mortgage from MERS to Appellee, was made retroactive to March 1, 2005, seventy (70) days prior to the note and**

---

1. On April 15, 2011, Appellee filed a second motion for summary judgment with an attached affidavit. The affiant is an employee of Wells Fargo DBA America's Servicing Company and was dated November 16, 2010. It states that the appellant defaulted on installments **due July 1, 2009** and each and every month thereafter.

2. The original note was signed on May 10, 2005.

**mortgage being executed.** Appellants assert the retroactive assignment may have been designed to cover possible violations of prohibited transactions for retirement plans or to demonstrate the transfer occurred prior to MILA filing bankruptcy on July 7, 2007. Appellants demanded, in their response to the motion for summary judgment, proof that MILA had authority to execute an assignment of the mortgage and indorsement of the note.

¶ 7 Appellants assert the note provided by Appellee does not have an indorsement and they claim such indorsement is necessary under the Uniform Commercial Code, 12A O.S.2001, Sections 3–103(a), 3–203 and 3–204. Appellants fear without an indorsement they are vulnerable to future liability on the original note by another party.[3]

¶ 8 A summary order was filed August 18, 2010, denying Appellee's motion for summary judgment because there were factual issues to be resolved.

¶ 9 Appellee filed a second motion for summary judgment on April 15, 2011. Appellee attached to the second motion for summary judgment, for the first time, a copy of the note with a blank allonge purportedly executed by an assistant funding manager of MILA. This allonge reflects "payable to the order of" "without recourse." Appellee asserted appellant did not contest the genuineness, authenticity and execution of the note and mortgage, and further, Appellants admitted at deposition they were behind on their payments.[4] Therefore, Appellee asserted a prima facie case for foreclosure, specifically a valid mortgage exists and there had been a default.

¶ 10 Appellants filed an objection and cross motion for summary judgment on May 4, 2011. Appellants admit Alexander signed the note and mortgage on May 5, 2005. Appellants allege, on July 7, 2007, MILA filed for Chapter 11 bankruptcy in the Western District of Washington, and there has been no relief from the automatic stay for the subject property of this action.[5]

¶ 11 The trial court, on June 7, 2011, granted summary judgment in favor of Appellee and awarded Appellee costs and attorney fees. On June 10, 2011, Appellee alleges counsel for Appellants would not sign the journal entry of judgment because he thought attorney fees were unreasonable.[6] Appellee filed a motion to settle journal entry on June 17, 2011, and Appellants filed an objection on June 27, 2011. The basis for the objection is that Appellee's attorney fees are

---

3. Appellants also challenge the authority of MILA to assign any interest by reason of the bankruptcy action in the Western District of Washington; challenge the signature on the assignment made by an attorney of the Appellees law firm; assert a federal law which prohibits transfers of securitized mortgages ninety days after closing; assert that ASC (Americas Servicing Company) a division of Wells Fargo breached a duty of good faith by offering a "special forbearance agreement", receiving a payment and returning a payment; assert the Uniform Retirement System for Justices and Judges holds assets which include securitized loans and possibly the loan subject to this action, objecting to a member of the system rendering a decision in the matter.

4. December 3, 2010, deposition of John Alexander "[so] at the time, we were getting behind on our payments. We were one month behind." December 3, 2010, deposition of Lisa Alexander, John's wife, "[We] were behind May and June. And in July, I called them to let them know I was going to make May, June and July payments, which was approximately July the 2nd. And they said that the company had already foreclosed."

5. Appellants objection and cross motion raised many of the same issues raised in the response to the first motion for summary judgment including but not limited to; disputing the authority of the attorney of record to sign as a vice president of MERS; Appellants had made three increased payments to ASC, a subsidiary to determine if Appellants could continue in their current payments; also asserting ASC intentionally delayed and harassed the Appellants forbearance agreement efforts and dropped the Appellants forbearance efforts in violation of the Home Affordable Modification Program (HAMP).

Appellees replied to the objection to their Summary judgment asserting their possession of the note and the assignment of the mortgage, notwithstanding the effective date stated in the assignment, notwithstanding the assignment of the note at a later date, minimizes the importance of the assignment of the mortgage. Appellee admits to no evidence to support the allegation of a loss of the mitigation effort and forbearance efforts.

6. Plaintiff's Motion to Settle Journal Entry and Application to Tax Costs and Attorney fees filed June 17, 2011.

unreasonable due to Appellants' inability to determine who was the holder of the note by reason of the inconsistencies in the various pleadings, and Appellees failure to provide loan transfer documents to Appellants when requested in discovery.

¶ 12 Appellants filed their petition in error on July 7, 2011, and later amended the petition in error to include the file stamped copy of the journal entry of judgment filed August 15, 2011. The Journal Entry of Judgment favored Appellee and found no substantial controversy as to any material fact. The Journal Entry of Judgment also denied Appellants cross motion for summary judgment.

## STANDARD OF REVIEW

¶ 13 An appeal on summary judgment comes to this court as a *de novo* review. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing the summary judgment. *Rose v. Sapulpa Rural Water Co.*, 1981 OK 85, 631 P.2d 752. Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions. *Gaines v. Comanche County Medical Hospital*, 2006 OK 39, ¶ 4, 143 P.3d 203, 205.

## ANALYSIS

¶ 14 Appellant asserts nineteen (19) issues on appeal.[7] These include error by the trial court in not requiring more contemporaneous evidence of the transfer of the note and mortgage when allegedly Appellee's counsel and its loan servicer, ASC, did not know which entity had standing to enforce the note. Appellants argue the trial court committed reversible error by not requiring a valid assignment of mortgage prior to commencement of the foreclosure action. Essentially, Appellant is arguing Appellee did not have standing to bring the foreclosure action because there was a material issue of fact as

7. (paraphrased) Did the trial court commit reversible error: 1) when applying the case law of local community banks being in possession of the original note and mortgage as proof of their standing to sue when a securitized mortgage trust portfolio is involved; 2) in not requiring more contemporaneous evidence of the transfer of note and mortgage in light of the loan servicer, ASC and plaintiff's counsel not knowing the real party in interest; 3) in not requiring plaintiff to have a valid assignment of mortgage prior to commencement of suit; 4) granting the earlier default judgment and failure to grant defendant's cross motion for summary judgment; 5) in granting substitution of parties without new summons being issued and served; 6) by granting summary judgment to plaintiff and not to defendants when pleadings state Wells Fargo was the holder of the note on July 23, 2009, and that date and October 6, 2009, the note and mortgage were transferred to U.S. Bank NA when the assignment of mortgage, filed on August 13, 2009, purported to be effective March 1, 2005, seventy (70) days prior to date of note and mortgage; 7) in recognizing an assignment of real estate mortgage executed by an attorney whose last name is in the firm's name of plaintiff's counsel as an authorized party; 8) in acknowledging an assignment of real estate mortgage with a prior effective date; 9) in acknowledging a corrective assignment of mortgage only filed with the court in a reply to a cross motion for summary judgment on May 26, 2011; 10) in not requiring proof of plaintiff's loan servicer giving a reason for the unexplained discontinuation of the forbearance agreement, even after limited discovery responses, when their records show the payments were made; 11) in not requiring plaintiff to offer HAMP after or if plaintiff proves it is the real party in interest; 12) in not considering the effect of MILA's ongoing Chapter 11 bankruptcy on its authority to assign notes and mortgages; 13) in not considering the effect of plaintiff's own prospectus prohibiting transfers into the Trust after ninety (90) days; 14) in granting summary judgment in light of this ninety (90) day requirement when plaintiff's own counsel argues that the assignment of real estate mortgage also transferred the note which date is either August 13, 2009, or, according to the corrective assignment, August 18, 2010; 15) in not requiring more substantial proof than the accompanying affidavit that the file was in order, as both affidavits covered a file that contains an assignment of real estate mortgage bearing an effective date seventy (70) days prior to the actual execution of the mortgage; 16) in not considering whether the Trust's governing state law allows the trustee to waive the ninety (90) day transfer requirement; 17) by not finding that any Oklahoma court should recuse itself because the Uniform Retirement System for Justices and Judges has assets with Credit Suisse First Boston's HEAT pooled securitized loans; 18) granting attorney fees which would not have occurred but for plaintiff's own timeline pleading errors and admitted by virtue of corrective, defective assignments of real estate mortgage; 19) in awarding attorney fees that were the result of plaintiff's errors.

to whether the Appellee was a person entitled to enforce the note at the time Appellee filed its amended petition. Standing is the dispositive issue in this case.

¶ 15 Appellee argues in its response to petition in error that at no time did appellant ever file an answer and no defenses have ever been asserted or preserved.[8] Appellee asserts that Appellants' nineteen (19) issues are either abandoned, expired or are in contravention of established law. Appellees acknowledge the only issues preserved for appeal are those raised by Appellants in pleadings or oral argument. In the opinion of the Appellee, the preserved issues are: 1) did Appellee provide sufficient evidence that it has standing to enforce the note and mortgage; 2) does negotiation of the note carry with it the security interest independent of a formal assignment; 3) if not, is the formal assignment in this matter effective; and 4) are the attorney's fees reasonable.

¶ 16 As previously identified, the dispositive issue is whether or not Appellee had standing at the time Appellee filed their first amended petition. We hold that the issue of standing as well as other material issues of fact remain that must be determined by the trial court. Therefore summary judgment was inappropriate.

¶ 17 This Court has previously held:

Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion. This Court has consistently held that standing to raise issues in a proceeding must be predicated on interest that is "direct, immediate and substantial." Standing determines whether the person is the proper party to request adjudication of a certain issue and does not decide the issue itself. The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome.

*Matter of the Estate of Doan,* 1986 OK 15, ¶ 7, 727 P.2d 574, 576. In *Hendrick v. Walters,* 1993 OK 162, ¶ 4, 865 P.2d 1232, 1234, this Court also held:

Respondent challenges Petitioner's *standing* to bring the tendered issue. Standing refers to a person's legal right to seek relief in a judicial forum. *It may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte.* (emphasis original)

▮ ¶ 18 Furthermore, in *Fent v. Contingency Review Board,* 2007 OK 27, footnote 19, 163 P.3d 512, 519, this Court stated "[s]tanding may be raised at any stage of the judicial process or by the court on its own motion." Additionally in *Fent,* this Court stated:

Standing refers to a person's legal right to seek relief in a judicial forum. The three threshold criteria of standing are (1) a legally protected interest which must have been injured in fact—*i.e.,* suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. The doctrine of standing ensures a party has a personal stake in the outcome of a case and the parties are truly adverse.

*Fent v. Contingency Review Board,* 2007 OK 27, ¶ 7, 163 P.3d 512, 519–520. In essence, a plaintiff who has not suffered an injury attributable to the defendant lacks standing to bring a suit. And, thus, "standing [must] be determined as of the commencement of suit; . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 570, n. 5, 112 S.Ct. 2130, 2142, 119 L.Ed.2d 351 (1992).

▮ ¶ 19 To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff

---

8. The order vacating the judgment did not require Appellants to file an answer. Rule 13 of the Rules of the District Courts of Oklahoma allows a motion for summary judgment to be filed "any time after the filing of the action." 12 O.S. Supp.2002, ch.2, app. (Rule 13(a)). The rule only requires a defendant to file a "concise written statement of the material facts as to which a genuine issue exists and the reasons for denying the motion." 12 O.S. Supp.2002, ch.2, app. (Rule 13(b)). It also requires the adverse party to "attach to the statement evidentiary material justifying the opposition to the motion." It appears Appellants substantially complied with this rule by their assertions in their counter motion for summary judgment.

lacks standing. *Gill v. First Nat. Bank & Trust Co. of Oklahoma City,* 1945 OK 181, 159 P.2d 717.[9] An assignment of the mortgage, however, is of no consequence because under Oklahoma law, "[p]roof of ownership of the note carried with it ownership of the mortgage security." *Engle v. Federal Nat. Mortg. Ass'n,* 1956 OK 176, ¶ 7, 300 P.2d 997, 999. "Therefore, in Oklahoma it is not possible to bifurcate the security interest from the note." *BAC Home Loans Servicing, L.P. v. White,* 2011 OK CIV APP 35, ¶ 10, 256 P.3d 1014, 1017. Because the note is a negotiable instrument, it is subject to the requirements of the UCC. Thus, a foreclosing entity has the burden of proving it is a "person entitled to enforce an instrument" by showing it was "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 12A–3–309 or subsection (d) of Section 12A–3–418 of this title." 12A O.S. 2001 § 3–301.

¶ 20 To demonstrate you are the "holder" of the note you must prove you are in possession of the note and the note is either "payable to bearer" (blank indorsement) or to an identified person that is the person in possession (special indorsement).[10] Therefore, both possession of the note and an indorsement on the note or attached allonge [11] are required in order for one to be a "holder" of the note.

¶ 21 To be a "nonholder in possession who has the rights of a holder" you must be in possession of a note that has not been indorsed either by special indorsement or blank indorsement. No negotiation has occurred because the person now in possession did not become a holder by lack of the note

being indorsed as mentioned. Negotiation is the voluntary or involuntary transfer of an instrument by a person other than the issuer to a person who thereby becomes its holder. 12A O.S.2001, § 3–201. Transfer occurs when the instrument is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. 12A O.S.2001, § 3–203. Delivery of the note would still have to occur even though there is no negotiation. Delivery is defined as the voluntary transfer of possession. 12A O.S.2001, § 1–201(b)(15). The transferee would then be vested with any right of the transferor to enforce the note. 12A O.S.2001, § 3–203(b). Some jurisdictions have held, without holder status and therefore the presumption of a right to enforce, the possessor of the note must demonstrate both the fact of the delivery and the purpose of the delivery of the note to the transferee in order to qualify as the person entitled to enforce. *In re Veal,* 450 B.R. 897, 912 (B.A.P. 9th Cir.2011). See also, 12A O.S.2001, § 3–203.

■ ¶ 22 Appellants argue Appellee does not have standing to bring this foreclosure action. Appellee claimed in its first amended petition, by re-alleging all of the allegations in Wells Fargo's original petition, it was the present holder of the note and mortgage. Over a year later in Appellee's second motion for summary judgment, it refers to itself as the current holder and assignee of the mortgage. Not until the second motion for summary judgment did Appellee attach an undated allonge to the note. No other pleading or motion prior to this time contained an indorsement on the note. This allonge was signed by an assistant funding manager of

---

9. This opinion occurred prior to the enactment of the Oklahoma UCC. It is, however, possible for the owner of the note not to be the person entitled to enforce the note if the owner is not in possession of the note. (See the *REPORT OF THE PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE, APPLICATION OF THE UNIFORM COMMERCIAL CODE TO SELECTED ISSUES RELATING TO MORTGAGE NOTES (NOVEMBER 14, 2011)).*

10. 12A O.S.2001, §§ 1–201(b)(21), 3–204 and 3–205.

11. According to Black's Law Dictionary (9th ed. 2009) an allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." See, 12A O.S.2001, § 3–204(a). It should be noted that under 12A O.S.2001, § 3–204(a) and its comments in paragraph 2, it is no longer necessary that an instrument be so covered with previous indorsements that additional space is required before an allonge may be used. An allonge, however, must still be affixed to the instrument.

the lender, MILA. Had this allonge been attached to Appellee's first amended petition there would not be an issue as to whether Appellee was the holder of the note upon commencement of its action. However, there still remains the issue of whether or not MILA had been in bankruptcy when the note was transferred and its authority to transfer the note. Therefore, we cannot determine whether Appellee was a holder of the note at the time it filed its first amended petition. This issue of fact must be resolved upon remand to the trial court. Further the assignment of a mortgage which is made effective by its own terms to a timeframe **prior** to the execution of the original note and mortgage, raises obvious issues of material fact as to the validity of the assignment and the activities of the Appellee.

¶ 23 The assignments purport to transfer not only the mortgage but also the note. However, these assignments are made by MERS, as nominee for MILA. Neither Oklahoma law nor the mortgage documents define the term "nominee." In the absence of a contractual definition, the parties leave the definition to judicial interpretation. Black's Law Dictionary (9th ed. 2009) defines a nominee as "[a] person designated to act in place of another usu[ally] in a very limited way." (9th ed. 2009). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." *Landmark Nat. Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158, 166 (2009). By definition a "nominee" is substantially the same as the definition of an "agent." [12] The legal status of a nominee/agent, then, depends on the context of the relationship of the nominee/agent to its principal.

¶ 24 MERS is only the nominee of the lender for purposes of the mortgage. Arguably, MERS may be able to assign the mortgage as nominee of the lender, but there is no evidence of authority for MERS to indorse the note.

¶ 25 Although Appellee has argued it holds the note, the only evidence in the record

supporting it was a holder of the note was the allonge which was presented over a year after Appellee filed its first amended petition. As shown, a party must have standing at the time it commences its action. *Deutsche Bank National Trust v. Brumbaugh*, 2012 OK 3, 270 P.3d 151. Because standing is the dispositive issue, we will not address the remaining issues on appeal. The determination of the remaining relevant issues must be made by the trial court on remand.

## CONCLUSION

¶ 26 It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and to have the proper supporting documentation in hand when filing suit, showing the history of the note, so that the defendant is duly apprised of the rights of the plaintiff. This is accomplished by showing the party is a holder of the instrument or a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A O.S. 2001, § 3–309 or 12A O.S.2001, § 3–418. Likewise, for the homeowners, absent adjudication on the underlying indebtedness, today's decisions to reverse the grant of a motion for summary judgment cannot cancel their obligation arising from an authenticated note, or insulate them from foreclosure proceedings based on proven delinquency. See, *U.S. Bank National Association v. Kimball*, 27 A.3d 1087, 75 UCC Rep.Serv.2d 100, 2011 VT 81 (Vt.2011); and *Indymac Bank, F.S.B. v. Yano–Horoski*, 78 A.D.3d 895, 912 N.Y.S.2d 239 (2010). This Court's decision in no way releases or exonerates the debt owed by the defendants on this home.

## REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

¶ 27 CONCUR: TAYLOR, C.J., KAUGER, WATT, EDMONDSON, REIF, COMBS, JJ.

---

**12.** Black's Law Dictionary defines "agent" as "[o]ne who is authorized to act for or in place of another; a representative." 9th ed. 2009.

¶ 28 DISSENT: WINCHESTER (JOINS GURICH, J.), GURICH (BY SEPARATE WRITING), JJ.

¶ 29 RECUSED: COLBERT, V.C.J.

GURICH, J., with whom WINCHESTER, J. joins dissenting:

¶ 1 I respectfully dissent. Although the majority in this case reverses summary judgment to resolve factual issues on remand, a careful look at the record reveals no issues of material fact remain, and the majority's reversal is based solely on the issue of standing. The record in this case indicates that after substituting the correct plaintiff, filing an amended petition, and filing a motion for summary judgment, which was denied by the trial court because issues of material fact remained, Plaintiff filed a second motion for summary judgment. Attached to Plaintiff's Second Motion for Summary Judgment was an indorsed-in-blank allonge, the mortgage, an assignment of mortgage, and an affidavit in support of the motion for summary judgment. Because the Plaintiff was the proper party to pursue the foreclosure and because the Plaintiff presented the proper documentation at summary judgment to prove such, the trial court was correct in granting summary judgment to plaintiff. I would affirm the trial court for the reasons stated in my dissenting opinions in *Deutsche Bank National Trust Co. v. Matthews*, 2012 OK 14, 273 P.3d 43 (Gurich, J., dissenting) and *Bank of America, NA v. Kabba*, 2012 OK 23, 276 P.3d 1006 (Gurich, J., dissenting).[1]

---

1. Although I originally concurred in the majority opinion in *Deutsche Bank National Trust v. Brumbaugh*, 2012 OK 3, 270 P.3d 151, which the majority now cites as authority in this case, after further consideration, I disagree with the majority's analysis in that case, and my views on the issues in these cases are accurately reflected in *J.P. Morgan Chase Bank, N.A. v. Eldridge*, 2012 OK 24, 273 P.3d 62 (Gurich, J., concurring in part and dissenting in part); *Kabba*, 2012 OK 23, 276 P.3d 1006 (Gurich, J., dissenting); *CPT Asset Backed Certificates, Series 2004–EC1 v. Kham*, 2012 OK 22, 278 P.3d 586 (Gurich, J., dissenting); *Deutsche Bank National Trust Co. v. Richardson*, 2012 OK 15, 273 P.3d 50 (Gurich, J., concurring in part and dissenting in part); and *Matthews*, 2012 OK 14, 273 P.3d 43 (Gurich, J., dissenting).