OSCN Found Document:BEAN v. ST. FRANCIS HOSPITAL, et al.

 

 
 BEAN v. ST. FRANCIS HOSPITAL, et al.2026 OK 27Case Number: 122395Decided: 04/28/2026THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2026 OK 27, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

MITZIE BEAN, Plaintiff/Appellant,
v.
ST. FRANCIS HOSPITAL, INC., Defendant/Appellee,
and
WARREN CLINIC, INC., and PAUL BERRY, M.D., Defendants.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION I

¶0 A patient, who had a contrast infiltration from an IV placed in her left hand in preparation for a CT scan, brought a medical malpractice action against a hospital. The district court granted the hospital's motion for summary judgment, holding that the patient could not prove her claim because the patient's expert, a registered nurse, was not qualified to testify as to the hospital physician's standard of care and could not prove that any alleged negligence on the part of hospital employees caused any injury. The Court of Civil Appeals reversed the district court's judgment, concluding that a question of fact existed as to whether the hospital non-physician employees were negligent and caused the patient's injury. This Court granted certiorari. We hold that the patient failed to prove her claim because she presented no qualified expert to testify as to the physician standard of care and to establish causation between the hospital's alleged negligent acts and the patient's injury.

COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT AFFIRMED.

Anthony M. Laizure, Laizure Law, PLLC, Tulsa, Oklahoma, for Appellant.

David G. Graves and Jeffrey L. Wilson, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, Oklahoma, for Appellees.

Winchester, J.

¶1 Mitzie Bean ("Bean") appeals summary judgment in favor of Appellee St. Francis Hospital, Inc. ("Hospital"). Bean claims that Hospital caused her injury when CT contrast by way of an intravenous injection escaped her vein. The issue before this Court is whether Bean met her evidentiary burden by relying on expert testimony from a nurse to support her allegations of medical negligence against Hospital. We hold that Bean failed to prove a prima facie case of medical negligence. Bean's claims against Hospital physicians fail as a nurse is not qualified to give expert opinions on the standard of care for physicians. Further, Hospital nurses cannot be held liable for complying with or failing to question a physician's order if there is no evidence that the physician breached the applicable standard of care in issuing the order. Finally, Bean did not properly establish a causal connection between an alleged breach in Hospital's standard of care and her injury.

FACTS AND PROCEDURAL HISTORY

¶2 On April 16, 2016, Bean called for an ambulance after experiencing chest pain at home. 

¶3 Two Hospital CT technicians performed the scan on Bean. They injected a contrast agent using a power injector through the IV placed in Bean's left hand. The contrast leaked from the vein in Bean's hand to the surrounding tissue. The technicians followed the infiltration/extravasation protocol and notified the emergency room personnel. They aspirated as much contrast as possible and removed the IV. The technicians also placed a cold compress on Bean's hand.

¶4 Several hours after the infiltration, Hospital physician entered an order for hyaluronidase. 

¶5 Bean filed suit against Hospital for medical malpractice and retained Lynn Hadaway, R.N., as an expert witness. Nurse Hadaway evaluated the case and opined to several ways in which Hospital's providers breached the standard of care:

(1) Nurse Hadaway testified that Hospital emergency room physician breached the standard of care in ordering a second IV, as the EMTs had already placed one in Bean's arm.

(2) Nurse Hadaway opined that Hospital nurses were negligent in following the physician's order to administer a second IV and placing it in the top of her hand with the wrong needle.

(3) Nurse Hadaway opined that Hospital CT technicians breached the standard of care by failing to document that they aspirated for blood return before injecting the contrast.

(4) Nurse Hadaway opined that Hospital CT technicians should have observed Bean's hand for 15 seconds prior to injecting the contrast.

(5) Nurse Hadaway criticized the timing of the administration of the antidote (hyaluronidase), opining that Hospital physician did not give it within the recommended time (one hour from the infiltration).

(6) Nurse Hadaway opined that Hospital nurses should have insisted that a physician order the antidote sooner.

(7) Nurse Hadaway criticized Hospital plastic surgeon's use of a heat compress to treat the infiltration.

(8) Nurse Hadaway opined that Hospital nurses should have questioned the plastic surgeon's decision to use a heat compress to treat the infiltration.

Nurse Hadaway did not opine as to causation, except that her report noted that the application of heat caused the contrast to spread and encouraged bleeding, which ultimately led to the formation of a hematoma.

¶6 Bean also retained Dr. Shynda Miles, M.D., Board Certified in Physical Medicine Rehabilitation, to opine on Bean's life care plan. Dr. Miles did not provide any standard of care opinions, but she did testify generally as to the effects or outcomes of an infiltration.

¶7 Hospital moved for summary judgment, arguing (1) Nurse Hadaway was not qualified to provide opinions on the standard of care delivered by Hospital physicians; 

¶8 Bean responded, contending (1) Nurse Hadaway was qualified to testify regarding the standard of care applicable to any medical personnel involved in administering contrast media by way of injection for a CT scan; (2) a qualified nurse may establish the standard of care, determine any breach of that standard, and opine as to causation concerning claims against nurses or other non-physician staff; (3) Hospital employees agreed on the standard of care for administration of contrast therapy, and they breached that standard; (4) Nurse Hadaway is qualified to testify as to causation for the claims against Hospital's nurses and CT technicians; and (5) the extravasation/infiltration of the contrast into Bean's hand caused the injuries in question.

¶9 The district court granted Hospital's motion, and Bean appealed. The Court of Civil Appeals (COCA) reversed, holding that a question of fact remained as to whether Hospital's non-physician employees were negligent and caused Bean's injuries, specifically as to the location of the second IV and the method used to administer the contrast. We granted certiorari.

STANDARD OF REVIEW

¶10 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, 2012 OK 43280 P.3d 936de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 3066 P.3d 442U.S. Bank, 2012 OK 43Id.

DISCUSSION

¶11 Three elements are essential for actionable negligence: (1) the defendant had a duty to protect the plaintiff from injury, (2) the defendant failed to properly exercise or fulfill that duty, and (3) the plaintiff suffered an injury directly caused by the defendant's failure. Thompson v. Presbyterian Hosp., Inc., 1982 OK 87652 P.2d 260Johnson v. Hillcrest Health Ctr., Inc., 2003 OK 1670 P.3d 811Turney v. Anspaugh, 1978 OK 101581 P.2d 1301

I. Bean failed to establish that Hospital physicians breached a standard of care in their treatment of her. 

¶12 First, Bean failed to establish the necessary elements in her claim against the Hospital physicians. Specifically, Bean cannot prove that the physicians breached a standard of care owed to her. Bean does not have a qualified expert to render standard of care opinions relating to her physician negligence claims, and Nurse Hadaway is not qualified to do so.

¶13 Where the expert witness does not have the same education, training, or experience as the defendant medical provider, all of which are generally necessary to render an opinion of benefit to a jury, the witness is generally not qualified to serve as an expert. See 12 O.S. Supp. 2025, § 2702. The functions of physicians and nurses differ significantly. Physicians are authorized "to prevent, diagnose, correct, or treat . . . any disease, illness, pain, wound, fracture, infirmity, defect, or abnormal physical or mental condition." 59 O.S.2021, § 49259 O.S. Supp. 2025, § 567.3a

¶14 In Gaines v. Comanche County Medical Hospital, 2006 OK 39143 P.3d 203other nurses and the standard of care applicable to decubitus ulcers ("bedsores"). The Gaines Court explicitly stated that it was not deciding the issue of whether a nurse would be an appropriate expert witness in a malpractice case filed with claims against a physician, as is the case here. Id. ¶ 19, 143 P.3d at 211. Furthermore, its ruling was limited to the "unique facts" of that particular case, i.e., a nurse with expertise about bedsores providing expert testimony about the standard of care applicable to other nurses for the prevention and treatment of bedsores. Id.

¶15 Here, Nurse Hadaway is a registered nurse who has a master's degree in adult education. She holds board certifications in nursing professional development and infusion nursing. Gaines case does not apply to the present case, as Nurse Hadaway is attempting to provide expert testimony regarding the standard of care applicable for an emergency room physician's order to place a second IV in a patient with a recent history of heart surgery, as well as physicians' orders for the treatment of a radiocontrast media infiltration. Nurse Hadaway is not qualified to offer such opinions. Specifically in this case, she is not qualified to offer expert opinion as to Hospital physicians' orders regarding a second IV, the timing of the administration of the antidote (hyaluronidase), and the use of a heat compress to treat the infiltration. Our holding aligns with other jurisdictions, which similarly do not allow nurses to testify about a physician's standard of care. 

II. Bean failed to establish that Hospital non-physicians breached a standard of care by not questioning the physicians' orders. 

¶16 Second, Bean failed to establish the necessary elements for her claims of failure to question against Hospital non-physician staff. Specifically, Bean cannot prove that Hospital's non-physician staff, mainly nurses, failed to fulfill a duty owed to her by complying with or not questioning the physicians' orders.

¶17 Generally, when a nurse follows the instructions or orders given by a physician, we have refused to hold the nurse--or the hospital that employs the nurse--liable for resulting injuries. See Strubhart v. Perry Mem'l Hosp. Trust Auth., 1995 OK 10903 P.2d 263Van Cleave v. Irby, 1951 OK 182233 P.2d 963

[N]urses have a duty to the patients admitted to the hospitals where they are employed to take appropriate action for the well-being of their patients any time it is obvious an independent contractor physician is providing negligent or incompetent treatment that falls below acceptable medical standards or has given an order to the nurse that is so obviously negligent as to lead any reasonable person to anticipate that substantial injury would result to the patient by carrying out or following the order.

Id. (internal citations omitted). Instead, nurses have a duty to follow physician orders unless the orders are obviously negligent. Id.

¶18 Here, Bean claims that Hospital nurses are directly liable for their failure to question the physicians' orders. Specifically, Bean alleges that Hospital nurses were negligent in following the physician's orders to place a second IV, failing to insist that the physician order hyaluronidase earlier, and complying with the plastic surgeon's order to administer heat to Bean's hand.

¶19 To prove this claim under Strubhart, Bean must first establish that Hospital physicians' instructions were negligent. This requires her to establish that Hospital physicians breached the standard of care, which she cannot do without an expert opinion. Since Bean does not have an expert witness to testify about the standard of care expected from physicians, her direct claims against the nurses for failure to question the physicians also must fail.

III. Bean failed to establish that Hospital employees caused her injury. 

¶20 Finally, Bean failed to establish the necessary causation element of her medical negligence claim against Hospital, specifically that Hospital's failure directly caused Bean's injury. Thompson, 1982 OK 87Boxberger v. Martin, 1976 OK 78552 P.2d 370see also Jones v. Mercy Health Ctr., Inc., 2006 OK 83155 P.3d 9see also Harder v. F.C. Clinton, Inc., 1997 OK 137948 P.2d 298Williams v. Safeway Stores, Inc., 1973 OK 119515 P.2d 223see also Reed v. Scott, 1991 OK 113820 P.2d 445Smith v. Hines, 2011 OK 51261 P.3d 1129Thompson, 1982 OK 87 13, 652 P.2d at 264.

¶21 Here, Bean failed to provide evidence, specifically proper expert testimony, to prove that her alleged permanent injury of Chronic Regional Pain Syndrome was caused by Hospital. Neither of Bean's expert witnesses adequately addressed causation in their opinions.

¶22 Nurse Hadaway opined that applying heat caused the contrast to spread and increased the risk of bleeding, which ultimately resulted in the formation of a hematoma. Hospital's plastic surgeon had ordered the use of a heat compress, and as previously discussed, Nurse Hadaway is not qualified to provide an opinion on a physician's use of a heat compress to treat the infiltration.

¶23 Additionally, Nurse Hadaway cannot provide an opinion on medical causation in this case. This decision is in line with numerous opinions from both federal and state courts that have also concluded that registered nurses are not competent to testify regarding medical causation in a medical negligence case. Gaines discussed above, the Court relied on Kansas law, which allowed nurses to give expert testimony in malpractice cases involving bedsores. See Gaines, 2006 OK 39Funk v. Pinnacle Health Facilities, 353 F. SupP.3d 1138, 1141 (D. Kan. 2018).

¶24 Similarly, in Denning v. Lifepoint Hosp., Inc., 277 P.3d 1193, 2012 WL 2148195, at *3-4 (Kan. Ct. App. June 8, 2012), the Kansas Court of Appeals acknowledged our exception in Gaines for bedsores but concluded that a nurse was not allowed to provide causation testimony in an IV infiltration case. The court reasoned that while a nurse may have extensive training in the correct placement and administration of IVs, they are not qualified to offer opinions about nerve damage resulting from an allegedly improper IV administration.

¶25 In another analogous case, the Tennessee Court of Appeals held that a registered nurse was not authorized to make medical diagnoses; therefore, she was not qualified to opine on medical causation in a malpractice action involving an IV infiltration. Richberger v. W. Clinic, P.C., 152 S.W.3d 505, 512 (Tenn. Ct. App. 2004). The Tennessee court also concluded that the patient could not establish a causal link between the alleged negligence of the medical provider and the patient's injury. The evidence presented indicated that while the medical provider might have deviated from the appropriate standard of care, fluid leakage from a blood vessel into surrounding tissue can occur without negligence. As a result, the court held that without expert testimony directly connecting the medical provider's alleged negligence to the patient's injury, the district court correctly granted summary judgment in favor of the medical provider. Id. at 513; see also Mid-South Retina, LLC v. Connor, 72 So.3d 1048, 1053 (Miss. 2011) (granting summary judgment in favor of a medical provider, holding that the patient's expert, a registered nurse, could not testify to medical causation in an IV infiltration case). 

¶26 The Denning and Richberger cases are instructive here. Nurse Hadaway may be qualified to administer an IV. However, we are not persuaded that she is qualified to provide an opinion as to the causal nexus between the administration of the IV, the infiltration of the contrast, and Bean's alleged permanent injury of Chronic Regional Pain Syndrome. Causation in this case requires scientific knowledge regarding blood, veins, catheters, and antidotes to determine the precise cause of the infiltration and whether the alleged breaches caused or exacerbated Bean's permanent injuries. Expert testimony regarding the medical cause of injuries is beyond a nurse's professional scope in Oklahoma. See 59 O.S. Supp. 2025, § 567.3aDenning, Bean's claims of ongoing pain and nerve damage necessitate scientific explanation. Establishing how an infiltration results in permanent nerve damage requires a medical diagnosis--an area that exceeds the scope of Nurse Hadaway's professional expertise. See, e.g., Bauer v. Friedland, 394 N.W.2d 549, 554-55 (Minn. Ct. App. 1986) (expert testimony required to establish a claim for permanent nerve damage). 

¶27 In the same way, Bean's second expert witness, Dr. Miles, did not provide any opinion regarding a breach of the standard of care by Hospital employees, nor did she explain how any such breach could have caused Bean's injury.

¶28 As in Richberger, without an expert witness explaining the causal nexus, Bean cannot make the required showing that Hospital employees caused Bean's injury. As a result, not only do Bean's direct claims against Hospital physicians and nurses fail as previously discussed, but Bean's claims against Hospital non-physicians also fail as to the placement of the IV in her left hand, the use of this site for contrast injection, the failure to assess the IV site or documentation of the same, and the inadequate monitoring of the site during the power injection. It is beyond common knowledge to determine whether any of these actions amount to breaches of the standard of care or whether they caused Bean's permanent injury. The claims fail due to the lack of proper expert testimony to link these alleged breaches and Bean's injuries.

CONCLUSION

¶29 We conclude that Bean did not establish medical negligence against Hospital. Her claims against Hospital's physicians are unsupported because a nurse is not qualified to provide expert opinions on the standard of care expected from physicians. Additionally, Hospital nurses cannot be held liable for following a physician's orders or for failing to question those orders if there is no expert evidence that the physicians violated the applicable standard of care in issuing them. Lastly, Bean did not adequately demonstrate a causal link between any alleged breach of the Hospital's standard of care and her injury. Accordingly, we vacate COCA's opinion and affirm the district court's judgment.

COURT OF CIVIL APPEALS' OPINION VACATED;
DISTRICT COURT'S JUDGMENT AFFIRMED.

CONCUR: ROWE, C.J., KUEHN, V.C.J., WINCHESTER, EDMONDSON, GURICH, DARBY, KANE, and JETT, JJ.

DISSENT: COMBS, J. 

FOOTNOTES

Hyaluronidase, Meriam-Webster.Com Dictionary (2026), available at www.merriam-webster.com/dictionary/hyaluronidase.

Rudy v. Meshorer, 706 P.2d 1234, 1237 (Az. Ct. App. 1985) (a registered nurse cannot establish the national standard of care for a doctor); Tucker v. Talley, 600 S.E.2d 778, 782 (Ga. Ct. App. 2004) (a nurse practitioner is not qualified to be an expert on the standard of care for a physician); Stryczek v. Methodist Hosp., Inc., 694 N.E.2d 1186, 1189 (Ind. Ct. App. 1998) (a nurse and a physician have a difference in their ability to diagnose and treat, and as a result, a nurse cannot offer expert testimony on the standard of care for a physician); Taplin v. Lupin, 700 So.2d 1160, 1162 (La. Ct. App. 1997) (a nurse is not qualified to testify as to the standard of care for an internal medicine physician); Waatti v. Marquette Gen. Hosp., Inc., 329 N.W.2d 526. 528 (Mich. Ct. App. 1982) (a nurse is not qualified to give expert testimony on the standard of care for an emergency medicine physician); Sheffield v. Goodwin, 740 So.2d 854, 856-57 (Miss. 1999) (a nurse practitioner is not qualified to be an expert on quality of care for dentistry or oral surgery).

See, e.g., Estate of Gee ex rel. Beeman v. Bloomington Hosp., No. 1:06--cv--00094--TWP--TAB, 2012 WL 639517, at *12 (S.D. Ind. Feb. 27, 2012); Peters v. Covenant Care Midwest, Inc., No. 8:08CV453, 2009 WL 3020140, at *7 (D. Neb. Sept. 21, 2009); Gordon v. Sunrise Senior Living Serv., No. 08--cv--02299--REB--MJW, 2009 WL 3698527, at *3 (D. Col. Nov. 5, 2009); Wright ex rel. Williams v. Mariner Health Care, Inc., No. 5:06cv169--DCB--JMR, 2008 WL 2704034, at *2 (S.D. Miss. July 3, 2008); Harvey v. United States, No. 04-CV-188-WYD-CBS, 2006 WL 1980623, at *5-6 (D. Colo. July 13, 2006); Elswick v. Nichols, 144 F. Supp. 2d 758, 767 (E.D. Ky. 2001); Phillips v. Alamed Co., 588 So.2d 463, 465 (Ala. 1991); Fein v. Permanente Med. Grp., 695 P.2d 665, 673-74 (Cal. 1985); Long v. Methodist Hosp. of Ind., Inc., 699 N.E.2d 1164, 1169 (Ind. App. 1998); Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 2009 WL 3465714, at *5 (Miss. Oct. 29, 2009); Richardson v. Methodist Hosp. of Hattiesburg, 807 So.2d 1244, 1248 (Miss. 2002); People v. R.R., 807 N.Y.S.2d 516, 538 (N.Y. Sup. Ct. 2005); Richberger v. W. Clinic, P.C., 152 S.W.3d 505, 511 (Tenn. Ct. App. 2004); Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d 245, 248-49 (Tex. Civ. App. 2004); Kent v. Pioneer Valley Hosp., 930 P.2d 904