OSCN Found Document:HIRSCHFELD v. OKLAHOMA TURNPIKE AUTHORITY

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 HIRSCHFELD v. OKLAHOMA TURNPIKE AUTHORITY
2023 OK 59
Case Number: 120981
Decided: 05/31/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2023 OK 59, __ P.3d __

 

 

TASSIE KATHERINE HIRSCHFELD, VERA GAYLE WARD, STANLEY M. WARD, RARCHAR TORTORELLA, TERESA ELAM, CAROL HERRON, JERRY HERRON, AMY CERATO, REBECCA RIGSBY, MICHAEL RIGSBY, BRIAN HALL, SHONIA HALL, RAY COULEMAN, TERRI COULEMAN, JILL THOMPSON, LINDA BARRY, JENNIE PATTERSON, MATT THOMPSON, VINCENT DOUGHERTY, KARLA MORTON, BOB GOODWIN, ROBYN GOODWIN, ROBERT WALLACE, CHELSEA WALLACE, CANDANCE F. HOTTLE, JANICE CHADWICK, CYNTHIA BARNARD, GENE KELLY RINER, FREDERICK THOMPSON, CHRISTINE THOMPSON, MARIAL LEE MARTYN, WESLEY E. CHANNELL, ROBIN STRADER, JEFFREY STRADER, NATACHA STRADER, MONTGOMERY LONG, DANNY CARPENTER, RITA CARPENTER, J.D. KROMER, KAREN GOODCHILD, WILLIAM JOHNSON, DONALD CORY, ROBBIE WHEELER, AMBER TUCKER, TOMMY LINGLE, LANEESE LINGLE, JEFFREY CARSON, SHARON FARRIS, MARIA KINDEL, JONATHAN KINDEL, BRIAN HOUCK, ROY TRITTEN, ANGIE FENTON, ARCHIE CLARK, DEBBIE CLARK, MARK DOOLING, CLAUDETTE WISPE, GILDA SUZANNE FAILING, ALLISON RENEE FAILING, GREGORY MATTHEW FAILING, KELLY RENAE KING, MICHAEL DODSON, PAULA DODSON, GARY MURRIAN, BARBARA MURRIAN, DEBRA A SALTZMAN, PAM MCINTOSH, CHRIS MILLSAP, KEVIN MILLSAP, BRIAN MITCHELL, CURTIS MITCHELL, NAOMI GOOCH, FRANCES MICHELLE SUMMERS, GUINNEVERE GEYER, TERESA HEARD, TERRY ANDERSON, TERESA ANDERSON, MELISSA BLEVINS, ROBIN SCHWAB, JOHN PAUL GAY, CHARLOTTE GAY, JIM BRISCOE, MATTHEW HOLLIS, KIMBERLY HOLLIS, DAN RYAN, NICOLE CROWSON, ANNETTE JAYE WATSON-PATTEN, LAYTON GOAD, HILARY WRIGHT, ELDON MURNAN, LINDA MURNAN, CHERYL LYNN BAY, TESSA, JOSEPH CONERLY, CHARLES JAY ARMSTRONG, ELLEN ANN EDGE, STEVE WEICHBRODT, JONI WEICHBRODT, MITCH BAROFF, JANET BRADFORD, DAVID A. BRADFORD, JAMES H. LITTLE, DAKOTA COOK, DIAN STEWART, ANTHONY STEWART, JEANETTE JAHNKE, JOY CUMMINGS, DARY STACY, TERENCE CUMMINGS, TASHA STACY, BRET STACY, KERENSA MARIE STURGELL, JOSHUA CADE ADKISSON, PATRICIA A O'BRIEN, SUE MARSHALL, DAVID MARSHALL, BRET A. DUFFEY, MINDY J. MCCALLICK-DUFFEY, ALI BEAUCHAMP, DON SONTHEIMER, DIANE VANLANDINGHAM, TANNER EUGENE NAEHER, DAVID LISENBERY, JR., SUSAN BEAUCHAMP, PHILIP BEAUCHAMP, TADD BLISS, TADD BLISS II, AUSTIN BEAUCHAMP, KENZIE THOMPSON, TIFFANY MICHELLE STEPHENS, CASSIE BROWN, WILLIAM DUSTIN HACKATHORN, TWYLA JEAN SMITH, JOEL ELLIS HOLLOWAY, GARY JAMES BILLINGSLEY, DARLYNN SADIE BILLINGSLY, PAMELA SUE GROOM, DARLA JOY LEBLANC, CEDRIC JAMES LEBLANC, DANIEL BROCKHAUSE, KEITH BROCKHAUSE, CAROLL SOTO, DONNA IRENE VINT, MELISSA MARIE YOUNG, GRACE WAGNER, TARA WAGNER, ISAAC IAN YOUNG, STANLEY M. WARD AS TRUSTEE OF THE STANLEY M. WARD REVOCABLE TRUST DATED OCTOBER 23, 2014; VERA GAYLE WARD AS TRUSTEE OF THE VERA GAYLE WARD REVOCABLE TRUST DATED OCTOBER 23, 2014, DAWN M. GOLDSMITH, KAREN TERESA CONTRERAS, BRIGITTE Y. KERSTEN-GATES, TOM HACKLEMAN, JOYCE JOHNSON, MELINDA SITES, STEPHEN E. SITES, ANDREW SPROUSE, JESSICA SPROUSE, MICHELLE TRISSELL, AUBREY WASHINGTON, RACHEL LYNN ROACH, WARREN KIPER, GARY J. HUMPHREY, RAGENIA G HUMPHREY, TONI YVONNE HOY, JEREMY LUKE HOY, JESSICA DARNELL, MAURICE SMITH, DIANA SMITH, GLEN RICHARDSON, MARY RICHARDSON, JANNA ROUSEY, HERB ROUSEY, KATHY PAGANONI, JOESPH PAGANONI, ANGELA PAGANONI, JOHN S. PAGANONI, RANDY POWELL, VICKI POWELL, DAVID W. CLARK, CHAD UNRUH, NATALEE UNRUH, JANET GAIL KIRBY, CLARA M. BOGGS, BRANDON NOFIRE, ALLIS CATHERINE MADOLE-VAUGHN, LISA FRANCIOSE OLSON SHARP, HOWARD PENNINGTON, CINDY PENNINGTON, PATRICIA J. RUCKER, ANDREW KAREKJAS, JORDAN DOERFEL, JENNIFER MARIE LARSEN, DAVIS BEAUCHAMP, MARIANNE BEAUCHAMP, JOHN KENNITH WHITSON, NICOLE LESLIE WHITSON, SHELLY RIGGS GUNTER, WILLIAM J. DANIEL, LISA A. WRIGHT, JANIE I. DANIEL, DOUGLAS KEITH BELLIS, KRISTINA MARIE BELLIS, KRISTINA FEEZOR, ROBERT FEEZOR, LOUISE JUDGE, RUTH CHAMBERS, JESSICA ANN SHUFORD, CHARLES ENLOE, KIM ENLOE, STEPHEN CRAIG MABREY, CYRUS HAINES, JEFFREY CARLSON, EDWARD TAYLOR, ABIGAIL TAYLOR, BRENTON VENA, ANNE LANGSTON, SARAH SUZANNE MOORE, GREGORY FITTER, GENE K. RINER, MARK WAGNER, DANIEL RYAN, NICOLE CROWSON, DAVID BERRY, QUINCIA BERRY, CODY SWINSON, CLINT SWINSON, GERRY E. GRIFFITH, THOMAS R. RUTLEDGE, JANELLE RUTLEDGE, DAVID ALVIN MOORE, JR., MICHAEL LEARY, JERRY EVANS, JONATHAN G BOGGS, ADAM BAKER, WAYNE BATES, CARLA BATES, MICHELLE SUMMERS, CHRISTINE COOPER, LEONARD COOPER, ANTHONY VERNON RIPLEY, DAWN NICOLE RIPLEY, WAYNE BALES, CARLA BALES and MARY MARTIN, Plaintiffs/Appellees,
v.
OKLAHOMA TURNPIKE AUTHORITY, an agency of the State of Oklahoma, Defendant/Appellant,
and
E. GENE LOVE, in his official capacity; JOHN D. JONES, in his official capacity; DANA WEBER, in her official capacity; TODD A. CONE, in his official capacity; WILL L. BERRY, in his official capacity; JOHN A. TITSWORTH, in his official capacity; and, TIMOTHY GATZ, in this official capacity, Defendants.

ON APPEAL FROM THE DISTRICT COURT OF CLEVELAND COUNTY
HONORABLE TIMOTHY L. OLSON, TRIAL JUDGE

¶0 A group of landowners filed a petition for declaratory judgment and injunctive relief, claiming that the Oklahoma Turnpike Authority violated the Open Meeting Act, 25 O.S.2021, §§ 301 to 314, regarding its notice to the public of the ACCESS Oklahoma Program. Both parties sought summary judgment. The district court rendered summary judgment in the landowners' favor, finding that the Oklahoma Turnpike Authority willfully violated the Open Meeting Act. We retained Oklahoma Turnpike Authority's appeal. We hold that the Oklahoma Turnpike Authority gave sufficient notice of the agenda items that the landowners challenge. We further rule that the lack of notice regarding the announcement of the ACCESS Oklahoma Program at the February 2022 meeting did not violate the Open Meeting Act because the announcement was for informational purposes only.

DISTRICT COURT'S JUDGMENT REVERSED AND 
CAUSE REMANDED WITH INSTRUCTIONS 
TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT.

Phillip G. Whaley and Grant M. Lucky, Ryan Whaley, Oklahoma City, Oklahoma, for Appellant.

Stanley M. Ward, Noble, Oklahoma, for Appellees.

Richard C. Labarthe and Alexey Tarasov, Labarthe & Tarasov, Oklahoma City Oklahoma, for Appellees.

Winchester, J. 

¶1 Appellees, a group of residents and landowners who claim they will be adversely affected by the construction of one of the proposed new turnpikes (the South Extension[1]) under the ACCESS[2] Oklahoma Program (ACCESS Program), brought their claims against the Oklahoma Turnpike Authority (OTA) in the Cleveland County District Court for violations of the Open Meeting Act (OMA), 25 O.S.2021, §§ 301 to 314. Appellees alleged that the OTA violated the OMA by not providing sufficient or timely notice of the new proposed turnpikes in either the January 2022 or February 2022 agendas. Appellees specifically challenged Agenda Items 884, 885, and 894 in the January 25, 2022 regular board meeting agenda as not identifying with specificity which "turnpike projects" the contracts involved. Appellees challenged Agenda Items 906, 908, and 909 in the February 22, 2022 regular board meeting agenda for not providing sufficient notice of the proposed South Extension. Appellees also challenged the lack of notice in the February 22, 2022 meeting agenda of Governor Kevin Stitt's announcement of the ACCESS Program. Appellees requested that the district court invalidate these specific agenda items as willful violations of the OMA and any subsequent actions related to those two items. They also requested that the district court enjoin the OTA from exercising its power of eminent domain over Appellees' properties until the OTA complied with the OMA. Both parties moved for summary judgment. The district court granted Appellees' motion, invalidating the actions taken by the OTA in approving Agenda Items 884, 885, and 894 during the January 25, 2022 regular board meeting and Agenda Items 906, 908, and 909 during the February 22, 2022 regular board meeting. The district court also granted declaratory relief, finding the OTA violated the OMA by announcing the ACCESS Program at the February 22, 2022 regular board meeting without giving notice of the announcement in the OTA's meeting agenda. The district court further ruled that although the lack of notice was violative of the OMA, the OTA did not take any action requiring invalidation. OTA appealed. This Court retained the appeal.

¶2 The issues for the Court to determine are whether the OTA complied with the statutory notice requirements of the OMA concerning the actions the OTA's Board of Directors (Board) took on six agenda items from its January and February 2022 regular meetings and whether the OTA violated the OMA concerning the announcement of the ACCESS Program. We hold that the OTA gave sufficient notice of the actions it took on the six challenged agenda items, as each agenda item provided notice of the subject matter of the business that the Board transacted. We further rule that the announcement of the ACCESS Program at the February 2022 meeting was for informational purposes only. Because no action was taken by the Board at the February 2022 meeting regarding the ACCESS Program and sufficient notice was given for the actions taken at the June 2022 special meeting regarding the ACCESS Program, the OMA did not require that the OTA give more specific notice of the announcement regarding the ACCESS project during the Director's Report.

BACKGROUND

¶3 During the OTA's December 2021 regular board meeting, the OTA confirmed that it was seeking to develop the "most robust long-range plan in its history," which included a discussion regarding the need to gather details to determine the viability of projects, conceptual designs, and funding options. The OTA also published a press release the same day, which stated that the OTA plans to hire consultants and additional professional services to vet the details and start conceptual design plans during the upcoming year. The OTA did not set out any specifics regarding any proposed turnpikes or routes. The next month, the OTA issued notice and posted its agenda for its January 25, 2022 meeting, including three challenged provisions:

ITEM 884 Consider, take action and vote for the approval or disapproval of a Resolution authorizing a bank revolving line of credit or other short-term bank loans or letters of credit ("Bank Facilities") in support of commercial paper in a principal amount NTE $200 million to provide interim financing of certain turnpike projects. -- Finance/Revenue Division

ITEM 885 Consider, take action and vote for the approval or disapproval of a Resolution authorizing the Director to submit an application to the Council of Bond Oversight for provisional and final approval of the interim financing of certain turnpike projects -- Finance/Revenue Division

ITEM 894 Consider, take action and vote for the approval or disapproval of the following Program Management Contract -- Engineering Division

 
 
 Project No.
 Consultant
 Amount
 Fund
 
 
 1. SP-65
 Poe & Associates
 NTE $4,960,000.00
 Gen.
 
 
 Program Management Services
 
  
 
 
  
 
 
 
 Long-Range Turnpike Improvement and Expansion Program
 
  
 
 
  
 
 
  
 
 
 

 

¶4 The OTA presented each item in the January meeting, and the Board voted unanimously to approve each item. The next month, the OTA issued notice and posted its agenda for its February 22, 2022 meeting, including three challenged provisions:

ITEM 906 Consider, take action and vote for the approval or disapproval of the following Professional Design Services Contracts for ACCESS Bond Program -- Engineering Division:

 
 
 Consultant
 Amount
 Fund
 
 
 1. Benham
 NTE $5,000,000.00
 GEN
 
 
 2. CEC
 NTE $5,000,000.00
 GEN
 
 
 3. Cowan
 NTE $5,000,000.00
 GEN
 
 
 4. CP&Y
 NTE $5,000,000.00
 GEN
 
 
 5. EST
 NTE $5,000,000.00
 GEN
 
 
 6. Garver
 NTE $5,000,000.00
 GEN
 
 
 7. MacArthur
 NTE $5,000,000.00
 GEN
 
 
 8. MKEC
 NTE $5,000,000.00
 GEN
 
 
 9. Olsson
 NTE $5,000,000.00
 GEN
 
 
 10. Poe & Associates
 NTE $5,000,000.00
 GEN
 
 
 11. TAG
 NTE $5,000,000.00
 GEN
 
 
 12. TEIM
 NTE $5,000,000.00
 GEN
 
 

 

ITEM 908 Consider, take action and vote for the approval or disapproval of the following Right-of-Way Management Contract(s) for ACCESS Bond Program and Capital Program -- Right of Way & Utility Division:

 
 
 Project No.
 Consultant
 Amount
 Fund
 
 
 1. SP-66
 Poe & Associates
 NTE $2,000,000.00
 GEN
 
 
 ROW Management Services
 
  
 
 
  
 
 
  
 
 
 
 Various Turnpikes
 
  
 
 
  
 
 
  
 
 
 

ITEM 909 Consider, take action and vote for the approval or disapproval of the following Utility Management Contract(s) for ACCESS Bond Program and Capital Program -- Right of Way & Utility Division

 
 
 
 Project No.
 
 
 Consultant
 
 
 Amount
 
 
 Fund
 
 
 
 
 1. SP-67
 
 
 TEIM Design
 
 
 NTE $2,000,000.00
 
 
 GEN
 
 
 
 
 Utility Management Services
 
 
  
 
 
  
 
 
  
 
 
 
 
 Various Turnpikes
 
 
  
 
 
  
 
 
  
 
 
 

¶5 The OTA presented each item in the February 2022 meeting, and the Board voted unanimously to approve each item. In its final item of the meeting, Governor Kevin Stitt, an ex-officio member of the OTA, announced the ACCESS Program, including the three proposed new turnpikes, noting one of the new proposed turnpikes would run from Purcell to the Kickapoo Turnpike (the South Extension). The next day, The Oklahoman and other news sources reported on the three proposed new turnpikes (the East-West Connector, Tri-City Connector, and South Extension) and the new turnpikes' proposed routes. The OTA also published the proposed routes on the ACCESS Program website. No item on the February 22, 2022 agenda mentioned the announcement of the ACCESS Program. However, the minutes for the February 22, 2022 meeting summarized the announcement under the Director's Report. The Board took no action regarding the ACCESS Program after the announcement.

STANDARD OF REVIEW

¶6 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, 2012 OK 43, ¶ 13, 280 P.3d 936, 939. Using the de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, 2003 OK 30, ¶ 5, 66 P.3d 442, 446. The Court has plenary, independent, and non-deferential authority to determine whether the district court erred in its legal rulings. State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, 2009 OK 61, ¶ 9, 222 P.3d 1058, 1064. The issues in this case involve the interpretation of the OMA, which is also a question of law subject to de novo review. Head v. McCracken, 2004 OK 84, ¶ 4, 102 P.3d 670, 674; Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652, 654.

ANALYSIS

¶7 The OTA, as a public trust, is subject to the OMA. 69 O.S.2021, § 1705 ("All meetings of the Authority shall be open public meetings."). The OMA's stated public policy is to "encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S.2021, § 302. In furtherance of this policy, at least 24 hours prior to a regular meeting or a special meeting, a public body is required to display public notice of a meeting, setting the date, time, place, and agenda for the meeting. 25 O.S.2021, § 311(A)(9) and (12).

¶8 The OMA requires that meeting agendas "identify all items of business to be transacted by a public body at a meeting." Id. § 311(B)(1) (emphasis added). The agenda must use "plain language, directly stating the purpose of the meeting," and the language used should be "'simple, direct and comprehensible to a person of ordinary education and intelligence.'" Andrews v. Indep. Sch. Dist. No. 29 of Cleveland Cty., 1987 OK 40, ¶ 7, 737 P.2d 929, 931 (approving Haworth Bd. of Educ. of Indep. Sch. Dist. No. I-6, McCurtain Cty. v. Havens, 1981 OK CIV APP 56, ¶ 9, 637 P.2d 902, 904). The Court must construe the OMA "liberally in favor of the public." Int'l Ass'n of Firefighters, Local 2479 v. Thorpe, 1981 OK 95, ¶ 17, 632 P.2d 408, 411; see also Lafalier v. Lead-Impacted Cmtys. Relocation Assistance Tr., 2010 OK 48, ¶ 37, 237 P.3d 181, 195. However, the Court cannot interpret the OMA to be "so exacting as to interfere with the ability of public bodies to freely conduct business." Fraternal Order of Police v. City of Norman, 2021 OK 20, ¶ 7, 489 P.3d at 27 (Rowe, V.C.J., concurring).

¶9 This Court has analyzed the sufficiency of a public body's notice in its agenda, comparing the agenda item description with the action taken to determine whether the public body provided sufficient notice. See Fraternal Order of Police, 2021 OK 20, ¶¶ 17-18, 489 P.3d 20, 26. We concluded that a public body violated the OMA's notice requirements when it exceeded the scope of the action defined by the notice or when the action contemplated other matters not noted in an existing agenda item. Id. Specifically, in Fraternal Order of Police, we held that the public body's notice was insufficient when the agenda stated that the public body would consider and take action to approve or disapprove a budget attached to the notice when instead, the public body amended and then approved the attached budget. Id. The Court explained that the public body violated the OMA because it gave no notice of reallocating resources or amending the budget. Instead, the agenda only gave notice that the public body would take action to adopt or reject the proposed budget. Id.[3]

¶10 We now turn to the specific agenda items challenged by Appellees to determine whether each of the agenda items provided notice of the subject matter of the business the Board transacted.

I. The challenged agenda items from the January and February 2022 meetings did not violate the OMA.

¶11 As to Agenda Items 884 and 885 on the January 2022 meeting agenda, the OTA first contends that there is no actual, justiciable controversy as to these items because in June 2022, the OTA terminated the Wells Fargo Line of Credit entered into pursuant to the Board's approval of Agenda Items 884 and 885. In other words, the OTA claims there is no Board action to invalidate. However, the harm under the OMA is when there is a "lack of proper notice and agenda[,] which are crucial to the act."[4] Subsequent events attempting to ratify a violation will not cure the violation or "breathe life" into the prior illegal action.[5] Even if the OTA terminated the line of credit, such action by the OTA does not cure a violation of the OMA if the OTA failed to give proper notice of an action taken by the Board regarding these specific agenda items.

¶12 Agenda Items 884 and 885 informed the public that the Finance/Revenue Division would submit to the Board a Resolution for consideration and action on a request for one or more short-term loans not to exceed $2,000,000.00 to be used for "certain turnpike projects." Appellees complained that the OTA did not specify what "turnpike projects" the short-term loans involved, specifically whether the financing was for the construction of the South Extension. As pointed out by the OTA, the term "turnpike projects" is a term defined[6] and used within the Enabling Act that authorizes the OTA "to construct, maintain, repair, and operate turnpike projects" and to issue turnpike revenue bonds to pay the cost of such projects. 69 O.S.2021, §§ 1701 and 1705(e). The OTA similarly uses the term and ascribes the same meaning as prescribed by the Legislature. Further, the OTA included with the agenda a copy of the Resolution to be considered by the Board. The Resolution did not identify any specific turnpikes; importantly, it referred to interim financing for "turnpike projects," which is what the OTA specified in the agenda item. The Board considered and approved the Resolution, without any modifications, additions, or amendments.

¶13 Similarly, Agenda Item 894 for the January 2022 meeting informed the public that the Engineering Division would submit to the Board a consulting engineering services contract for consideration and action. The scope of the contract was to hire an engineering design firm that would begin the process of developing design, final plans, specifications, and construction for the "long-range turnpike improvement and expansion program," which the OTA eventually announced as the ACCESS Program in its February 2022 meeting. Appellees again complained that the OTA did not specify what turnpikes were involved in the "long-range turnpike improvement and expansion program." The contract was not for the construction of a specific component of any turnpike project, and the contract did not reference any specific turnpike project. The contract was instead for "Program Management Services," which is what was specified in the agenda item. The Board considered and took action only on the contract expressly stated in the agenda, without any modifications, additions, or amendments.

¶14 Agenda Items 906, 908, and 909 from the February 2022 meeting reflect that the Board was to consider various design, right of way, and utility management contracts for the "ACCESS Bond Program and Capital Program." Appellees do not specify how the OTA allegedly violated the OMA regarding these agenda items. However, we presume that they again have taken issue with the lack of specificity as to whether these contracts involve the construction of the South Extension. The Board again considered and took action only on the contract expressly stated in the agenda, and the Board's approval did not include a contract for a specific component of any turnpike project.

¶15 The level of specificity demanded by Appellees in the agenda items is not required by the OMA. Appellees contend that the OTA should have used the words "South Extension" (or some similar variation) to give notice that the proposed turnpike was going to be constructed as part of the ACCESS Program. However, these items of business dealt with several turnpike projects on a larger scale than the possible construction or proposed route of the South Extension. Instead, the business transacted was to obtain interim financing to fund the continued planning activities of the OTA's operations, approval of a consulting engineering services contract, and various design, right-of-way, and utility management contracts to develop the ACCESS Program, which involved not only the development of three new turnpikes but also other projects throughout Oklahoma to improve current turnpikes and their infrastructure. The only actions the Board took were to consider and approve these construction, engineering, and service contracts, as set out in the January and February 2022 agenda items. Each challenged agenda item satisfies the OMA's statutory notice requirements.

¶16 Further, the Board's approval of the challenged agenda items did not authorize the proposed route of the South Extension, the construction of the South Extension, or the taking of Appellees' property for the construction of the South Extension. Instead, the Board authorized the issuance of bonds for the construction of the South Extension and the proposed route at the OTA's Special Meeting held on June 9, 2022. Appellees do not challenge the OTA's notice in relation to any agenda items from the June 9, 2022 meeting, including those items that authorized the construction and route for the South Extension.

II. The lack of notice in the agenda regarding the announcement of the ACCESS Program did not violate the OMA.

¶17 The OTA also did not violate the OMA when Governor Stitt announced the ACCESS Program during the Director's Report section of the February 2022 meeting. The OMA requires that meeting agendas identify "all items of business to be transacted by a public body at a meeting." 25 O.S.2021, § 311(B)(1) (emphasis added). The remedy for a violation of the OMA notice requirements is to invalidate the action taken by officials. See 25 O.S.2021, § 313 ("Any action taken in willful violation of this act shall be invalid."); see also Bailey v. State ex rel. Bd. of Tests for Alcohol and Drug Influence, 2022 OK 50, ¶ 37, 510 P.3d 845, 589 (holding that the OMA requires a willful violation to invalidate the action of officials). To violate the OMA notice requirements, the agenda item at issue must have some action taken by the public body to transact business. An opinion by the Office of the Attorney General reached a similar conclusion:

"Business," not having been defined in the Open Meeting Act, must be given a construction in consonance with the ordinary meaning of the term and in harmony with the purposes of the Open Meeting Act; and as stated, supra, a liberal interpretation must be indulged. Business should be assumed to include the entire decision-making process including deliberation, decision or formal action.

Question Submitted by: The Honorable David L. Moss, District Attorney, Tulsa County, 1982 OK AG 212, ¶ 3.

¶18 When Governor Stitt announced the ACCESS Program during the Director's Report, the Board did not transact any business during the presentation or as a result of the presentation. The Board did not engage in any deliberation or decision-making or take any action after the Governor's announcement. The presentation was merely an informational announcement, and under the OMA, the OTA did not need to specify the presentation on its agenda within the Director's Report.

¶19 In a similar case, a school board published an agenda for the regular board meeting, noting the superintendent would make his report and recommendations concerning an increase in academic requirements. Andrews, 1987 OK 40, 737 P.2d 929. The superintendent presented at the meeting his recommendation to increase the minimum number of credits for graduation and to increase the eligibility requirements for activities participation. The parents challenged the school board's notice of the superintendent's report, asserting that the notice was insufficient because it did not specify that the superintendent would discuss the issue of increasing academic requirements for activity participation. Id. ¶ 8, 737 P.2d at 931. We held that the notice was sufficient in that the OMA does not require the content of a report by a superintendent or any recommendations to be published in full prior to presenting the report to the board. Further, we ruled that because the issue of increasing these requirements was on the agenda for subsequent meetings in plain language, there was no violation of the OMA. Id. The agenda item regarding the superintendent's report contained broad language that afforded the school board flexibility in what could be discussed and acted upon at the meeting. Fraternal Order of Police, 2021 OK 20, ¶ 8, 489 P.3d at 27 (Rowe, V.C.J., concurring).

¶20 The same result as in Andrews should follow here. We note that the OTA has a "Reports" section at the end of its agenda for its regular monthly meetings. During this part of the meeting, several different divisions give reports, i.e., an operations report, a consulting engineer report, a highway patrol report, and a director's report. Rarely is the substance of these reports listed in the agenda because the presentations are for informational purposes only.

¶21 The Governor's informational announcement of the ACCESS Program occurred during the Director's Report. The OTA did not request that any action be considered by its board with respect to the announcement of the ACCESS Program. The next day, the information presented in the meeting was made public through various news sources and on the OTA's own ACCESS Oklahoma website, which included the preliminary locations and alignments for the specific projects. The OTA also hosted several public meetings regarding the proposed routes for the new turnpikes after the announcement. As in Andrews, the public was given notice of the subsequent meeting where the Board took action regarding the ACCESS Program--over 3 months after the initial announcement of the ACCESS Program and after a series of public meetings to discuss the ACCESS Program. During the OTA's special meeting on June 9, 2022, the Board approved: (1) the issuance of revenue bonds to finance or refinance all or a portion of the capital costs of the ACCESS Program; (2) a resolution directing the OTA to file an application to this Court for the validation of bonds; (3) the termination of the Wells Fargo Line of Credit dated May 17, 2022, to provide interim financing for the improvement of certain turnpike projects, including those projects identified in the ACCESS Oklahoma program; and (4) the route alignments published to the OTA's ACCESS Program website on February 22, 2022. Appellees did not challenge any agenda item for the actions taken during the June 9, 2022 meeting, specifically where the South Extension was officially proposed and approved by the Board.

¶22 When in doubt, it is always a better practice for public bodies to post in the meeting agenda the substance of an informational presentation. Such practice avoids challenges to a public body's compliance with the OMA. However, we are mindful that the purpose of board meetings is not only for the public bodies to take action but also to allow board members to ask questions and engage in informational discussions. We find no violation of the OMA when Governor Stitt announced the ACCESS Program during the Director's Report section of the February 2022 meeting.

III. This Court has the exclusive jurisdiction to consider the relief requested by Appellees. 

¶23 We note that Appellees' request for relief through this declaratory action is to prevent the OTA from exercising its eminent domain to construct the proposed South Extension. The challenged agenda items and even the announcement of the ACCESS Program do not relate to any action by the Board to take Appellees' property for the construction of the proposed turnpikes. Appellees agree in that they admit that invalidating the challenged agenda items would only amount to a setback in the OTA's efforts to construct the proposed turnpikes and not give the conclusive relief Appellees seek. This is because the Legislature conferred upon the Court "exclusive original jurisdiction" to determine the validity of proposed bonds to construct and operate turnpikes. 69 O.S.2021, § 1718. This Court has construed the Legislature's grant of jurisdiction as giving the Court sole authority to determine all questions of sufficiency of the law to authorize bonds and construct turnpikes. Okla. Tpk. Auth. v. Dist. Court of Lincoln Cty., 1950 OK 147, ¶ 11, 222 P.2d 514, 518. The Court must consider the validity of the bonds, the constitutionality of the bonds, and the OTA's authority to construct and operate turnpikes. Id. ¶ 6, 222 P.2d at 517. This Court gained exclusive jurisdiction to consider the relief requested by Appellees--to prevent the OTA from exercising its eminent domain to construct the proposed South Extension--when the OTA filed its application to validate the proposed bonds. In fact, many of the Appellees have filed a protest, placing the authority of the OTA to construct the proposed turnpikes at issue in the bond validation matter. Any future construction of the South Extension will hinge upon determinations made by this Court in the bond validation matter. Since exclusive jurisdiction belongs to this Court, the district court should never have considered Appellees' claims for relief. In the future, proceedings related to bond validation matters must be brought in this Court.

CONCLUSION

¶24 The OTA gave sufficient notice of the actions it took on the six agenda items challenged by Appellees, as the items provided notice of the subject matter of the business that was transacted as to each item. We further rule that the announcement of the ACCESS Program at the February 2022 meeting was for informational purposes only. Because no action was taken by the Board at the February 2022 meeting regarding the ACCESS Program, the OMA did not require that the OTA give more specific notice of the announcement regarding the ACCESS project during the Director's Report. The district court's order granting summary judgment in favor of Appellees is reversed and the cause is remanded with instructions for the district court to grant summary judgment in favor of the OTA.

DISTRICT COURT'S JUDGMENT REVERSED AND 
CAUSE REMANDED WITH INSTRUCTIONS 
TO GRANT SUMMARY JUDGMENT IN FAVOR OF APPELLANT.

CONCUR: KANE, C.J., KAUGER, WINCHESTER, EDMONDSON AND DARBY, J.J.

DISSENT: ROWE, V.C.J. (BY SEPARATE WRITING), GURICH AND KUEHN, J.J.

NOT PARTICIPATING: COMBS, J.

FOOTNOTES

[1] The ACCESS Oklahoma Program involves the construction of three proposed turnpikes and other projects to improve current turnpikes and their infrastructure. The three proposed turnpikes are 1) the Tri-City Connector, running around the west side of the Will Rogers World Airport to I-44; 2) the East-West Connector, connecting the H.E. Bailey Turnpike around Newcastle heading east on Indian Hills Road to the south of Draper Lake, then heading northeast connecting to the Kickapoo Turnpike and completing the Oklahoma City Outer Loop (Loop); and 3) the South Extension, running from I-35 west of Slaughterville and north of Purcell, across the South Canadian River and north through Norman, west of Thunderbird Lake, connecting with the East-West Connector.

[2] ACCESS stands for "Advancing and Connecting Communities and Economies Safely Statewide."

[3] Similarly, the Court of Civil Appeals (COCA) has decided this issue as well. In Wilson v. City of Tecumseh, 2008 OK CIV APP 84, 194 P.3d 140, COCA held an agenda item for the public body's regular meeting was insufficient. The agenda item stated the board would consider the employment, hiring, and resignation of an employee. Instead, the public body approved a $30,0000 bonus for the employee. COCA found the agenda did not directly state the purpose of the meeting. Id. ¶ 11, 194 P.3d at 144. In Havens, 1981 OK CIV APP 56, 637 P.2d 902, COCA ruled an agenda item for the public body's special meeting was insufficient. The agenda item stated that the purpose of the meeting was to appoint a new board member, interview a new administrator, and hire principals. Id. ¶ 6, 637 P.2d at 904. The board instead hired a superintendent. Id. ¶ 1, 637 P.2d at 903. COCA held that the board's action materially exceeded its announced purpose and intention. The agenda specifically limited the actions to be taken by the board, and the hiring of a superintendent was not one of those items. Id. ¶ 11, 637 P.2d. at 904.

[4] Wilson, 2008 OK CIV APP 84, 194 P.3d 140, ¶ 21, 194 P.3d at 146.

[5] In re Declaring Annexation Dated June 28, 1978, Issued by Frazier, 1981 OK CIV APP 57, ¶ 23, 637 P.2d 1270, 1274.

[6] Title 69 O.S.2021, § 1704(2) defines turnpike project as follows:

"Project" or "turnpike project" means any express highways, superhighways, or motorways, wayports, aviation transfer centers or aviation hubs constructed under the provisions of this article by the Authority, and shall embrace all bridges, tunnels, overpasses, underpasses, interchanges, entrance plazas, approaches, free access roads, bridges, and road construction, toll houses, service stations, and administration, storage and other buildings which the Authority may deem necessary for the operation of such turnpike, together with all property, rights, easements and interests which may be acquired by the Authority for the construction or the operation of such turnpike. The Authority may contract or lease concessions for gas stations, garages, restaurants, parking facilities and other services for all or any portion of any turnpike project or projects. 69 O.S.2021, § 1704(2).

 

 

ROWE, V.C.J., with whom GURICH and KUEHN, JJ., join, dissenting:

¶1 The express purpose of the Open Meeting Act (the "OMA"), is to "encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S. § 302. Public bodies subject to the OMA must comply with its express requirements, one of which is that all meetings must be preceded by advance public notice specifying the time and place of the meeting as well as the subject matter or matters to be considered at such meeting. Id. at § 303. The information regarding matters to be considered at the meeting are included on an agenda, which may be posted in view at the public bodies' office or meeting place and/or on the internet. Id. § 311(9)(a)(b). All posted agendas "shall identify all items of business to be transacted by a public body at a meeting. . . ." Id. at § 311(B)(1).

¶2 Our jurisprudence instructs that the "agenda shall 'be worded in plain language, directly stating the purpose of the meeting . . . [and] the language used should be simple, direct and comprehensible to a person of ordinary education and intelligence.'" Andrews v. Indep. Sch. Dist. No. 29 of Cleveland Cty., 1987 OK 40, ¶ 7, 737 P.2d 929, 931 (alterations in original) (quoting Haworth Bd. of Educ. of Indep. Sch. Dist. No. I-6, McCurtain Cty. v. Havens, 1981 OK CIV APP 56, ¶ 9, 637 P.2d 902, 904). Pertinent to the case before us, the policy of the OMA "is defeated if the required notice is deceptively worded or materially obscures the stated purpose of the meeting." Fraternal Ord. of Police, Bratcher/Miner Mem'l Lodge, Lodge No. 122 v. City of Norman, 2021 OK 20, ¶ 9, 489 P.3d 20, 24 quoting Haworth, 1981 OK CIV APP 56, ¶ 8, 637 P.2d at 904.

¶3 The OMA provides that any action taken in willful violation of the act is invalid. 25 O.S. § 313.

Willfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act. Notice of meetings of public bodies which are deceptively vague and likely to mislead constitute a wilful violation.

Rogers v. Excise Bd. of Greer Cty., 1984 OK 95, ¶ 14, 701 P.2d 754, 761.

THE CHALLENGED AGENDA ITEMS FROM THE JANUARY 25, 2022 AND
FEBRUARY 22, 2022 AGENDAS VIOLATED THE OPEN MEETING ACT.

¶4 Prior to December 7, 2021, the Oklahoma Turnpike Authority ("OTA") had not approved or even publicly discussed ACCESS Oklahoma.[1] (The OTA is a legal entity consisting of the Governor, as a member ex officio, and six members appointed by the Governor and approved by the Senate).[2] At its December 7 meeting, Oklahoma Secretary of Transportation and OTA Executive Director Timothy Gatz announced the OTA sought to develop its "most robust long-range plan in history."[3] However, Secretary Gatz failed to elaborate as to what the OTA's long-range plan encompassed or reference the plan's future name.

¶5 The minutes of the December 7, 2021 OTA meeting state that "more information about the long-range plan can be found in the Authority's Press Release dated December 7, 2021."[4] According to the press release, the OTA's "long-range plan" included: Improvements to help alleviate traffic on I-35 and I-44 as well as statements from several elected officials, including Newcastle Mayor Karl Nail who said that the long range plan "won't just impact Newcastle but will impact the entire state."[5]

¶6 On its January 25, 2022 agenda, the OTA used the deceptive phrases "certain turnpike projects" and "long-range improvement and expansion program" to materially obscure what was already internally known as ACCESS Oklahoma. In fact, the press release reflects that Secretary Gatz's announcement on December 7, 2021 of the OTA's "most robust long-range plan in history" was indeed a cryptic reference to ACCESS Oklahoma.

¶7 Subsequently, at the OTA's February 22, 2022 meeting, the OTA approved a series of contracts relating to an "ACCESS Bond Program." Yet again the OTA adhered to its pattern of obscurity by failing to reveal to the public what the program entailed or what "ACCESS" meant on its published agenda.[6] It was not until the end of the February meeting--after its implementation was funded and its management contracts were approved during the January and February meetings[7]--that ACCESS Oklahoma was unveiled to the public. Governor Stitt joined the meeting and officially unveiled the "most robust long-range plan in history"[8] as ACCESS Oklahoma--a five billion dollar turnpike project that would span fifteen years and affect the lives of thousands of Oklahomans.

¶8 The majority finds the "level of specificity demanded by the Appellees in the agenda items is not required by the OMA."[9] The majority's attenuated interpretation of the OMA as applied to the facts of this case defeats the Act's purpose. The issue is not whether the language used on the January 25, 2022 and February 22, 2022 Agendas met the statute's level of specificity--the issue is whether the OTA used deceptive wording to delay revealing to the public a project that was already well-known and well-underway within the OTA. By approving its creation and funding using the deceptive phrases "certain turnpike projects," "long-range improvement and expansion program," and "ACCESS Bond Program," ACCESS Oklahoma was presented to the public as a fait accompli.

¶9 The OTA created ACCESS Oklahoma, approved management contracts, and sought funding for its implementation--all while using deceptively worded agendas to obscure the purpose of the meetings and circumvent public participation. This participation by the public is precisely what the OMA seeks to guarantee. The actions of the OTA thwarted our state's public policy of encouraging and facilitating an informed citizenry's understanding and participation in the governmental process. As such, the OTA's actions constituted a willful violation of the Open Meeting Act.

OUR EXCLUSIVE JURISDICTION TO APPROVE BOND APPLICATIONS
DOES NOT DIVEST THE TRIAL COURT OF OPEN MEETING ACT CLAIMS.

¶10 The OMA is one of the most consequential statutory enactments our state has adopted in an effort to promote the public's right to know what its government is doing and for what purpose public funds are expended. Our state constitution declares that all political power in this state is vested in the people.[10] The objective of the OMA protects this guaranteed, constitutional right.

¶11 While the majority is correct that the Legislature has conferred upon this Court exclusive jurisdiction to determine the validity of bond applications, this Court's exclusive jurisdiction does not divest the trial court from determining whether an OMA violation occurred. The majority cites Oklahoma Turnpike Authority v. District Court of Lincoln County, 1950 OK 147, 222 P.2d 514 to support its finding that Plaintiffs' OMA claims fall within our exclusive jurisdiction. In OTA v. District Court of Lincoln County, we held that "this Court has jurisdiction to consider all questions raised by the plaintiffs in the action in the district court of Lincoln County, in so far as they concern the constitutionality of the law, and the sufficiency of the law to authorize petitioners herein to sell the bonds and construct the turnpike." ¶ 11, 222 P.2d at 518 (emphasis added). Our holding in 1950 is consistent with our holding in Pike Off OTA, Inc. et al., v. Oklahoma Turnpike Authority, 2023 OK 57, to which we affirmed that this Court has exclusive jurisdiction over any claims challenging the OTA's authority to construct proposed turnpikes.

¶12 Contrary to the cases above, Plaintiffs' OMA claims do not challenge the OTA's authority to construct the proposed turnpikes in ACCESS Oklahoma. Rather, Plaintiffs' OMA claims challenge whether the OTA conducted its meetings in accordance with state law. As such, Plaintiffs' claims do not fall within our exclusive jurisdiction, nor does our precedent suggest otherwise. Title 69 O.S. § 1718 cannot be construed to create a vacuum which subsumes any collateral issue concerning how the OTA conducts business into our exclusive jurisdiction. To interpret § 1718 as such will deprive plaintiffs the right to parse out separate legal questions that necessitate the trial court.

¶13 The majority's finding that Plaintiffs' alleged OMA violations should morph into the OTA's bond application before this Court would completely deny Plaintiffs of their opportunity to fully litigate the alleged violations. The question of whether the OTA complied with OMA requirements is a separate legal question where the trial court must ascertain findings of fact. The Supreme Court does not conduct trials--nor are we situated to make findings of fact. Without the ability to fully litigate the alleged violations in a trial or hearing, the Open Meeting Act is gutted. Accordingly, I cannot join in today's pronouncement which I view as an infringement on the people's right to legitimately challenge an Open Meeting Act violation. I respectfully dissent.

FOOTNOTES

[1] "ACCESS" stands for "Advancing and Connecting Communities and Economies Safely Statewide."

[2] 69 O.S. § 1703(B).

[3] Pls' MSJ Ex. C, 22.

[4] Id.

[5] OTA press release dated December 7, 2021, https://oklahoma.gov/content/dam/ok/en/ota/documents/news-articles/2021/OTA%20Press%20Release%20-%20December%207,%202021.pdf.

[6] Item 906 on the February 22, 2022 Agenda was the first time the acronym "ACCESS" was used publicly. However, it was not until the end of the February 22, 2022 meeting that the public learned what "ACCESS" meant when it was announced by Governor Stitt.

[7] On February 22, 2022 the Oklahoma Turnpike Authority published a press release that summarized the Governor's announcement of ACCESS Oklahoma and stated in part "The board hired Poe & Associates, an Oklahoma City-based engineering consultant, during the January 2022 board meeting to provide program management services for ACCESS Oklahoma's long-range plan projects." Pls' MSJ Ex. G, 55.

[8] Pls' MSJ Ex. C, 22.

[9] Majority Op. ¶ 15

[10] Okla. Const. Art. 2 § 1.

 

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2023 OK 84, 
IN THE MATTER OF THE APPLICATION OF THE OKLAHOMA TURNPIKE AUTHORITY
Cited

 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
1982 OK AG 212, 
Question Submitted by: The Honorable David L. Moss, District Attorney, Tulsa County
Cited

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2008 OK CIV APP 84, 194 P.3d 140, 
WILSON v. CITY OF TECUMSEH
Discussed at Length

 
1981 OK CIV APP 56, 637 P.2d 902, 
Haworth Bd. of Ed. of Independent School Dist. No. I-6, McCurtain County v. Havens
Discussed at Length

 
1981 OK CIV APP 57, 637 P.2d 1270, 
Matter of Order Declaring Annexation Dated June 28, 1978, Issued by Frazier
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 40, 737 P.2d 929, 58 OBJ 1422, 
Andrews v. Independent School Dist. No. 29 of Cleveland County
Discussed at Length

 
2003 OK 30, 66 P.3d 442, 
GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed

 
2003 OK 96, 81 P.3d 652, 
FULSOM v. FULSOM
Discussed

 
2004 OK 84, 102 P.3d 670, 
HEAD v. McCRACKEN
Discussed

 
2009 OK 61, 222 P.3d 1058, 
STATE ex rel. PROTECTIVE HEALTH SERVICES STATE DEPT. OF HEALTH v. VAUGHN
Discussed

 
2010 OK 48, 237 P.3d 181, 
LAFALIER v. THE LEAD-IMPACTED COMMUNITIES RELOCATION ASSISTANCE TRUST
Discussed

 
2012 OK 43, 280 P.3d 936, 
U.S. BANK, N.A. v. ALEXANDER
Discussed

 
2021 OK 20, 489 P.3d 20, 
FRATERNAL ORDER OF POLICE v. CITY OF NORMAN
Discussed at Length

 
2022 OK 50, 510 P.3d 845, 
BAILEY v. STATE ex rel. BD. OF TESTS FOR ALCOHOL AND DRUG INFLUENCE
Discussed

 
2023 OK 57, 531 P.3d 107, 
PIKE OFF OTA v. OKLAHOMA TURNPIKE AUTHORITY
Cited

 
1981 OK 95, 632 P.2d 408, 
International Ass'n of Firefighters, Local 2479 v. Thorpe
Discussed

 
1950 OK 147, 222 P.2d 514, 203 Okla. 330, 
OKLAHOMA TURNPIKE AUTH. v. DISTRICT COURT OF LINCOLN COUNTY
Discussed at Length

 
1984 OK 95, 701 P.2d 754, 
Rogers v. Excise Bd. of Greer County
Discussed

Title 25. Definitions and General Provisions

 
Cite
Name
Level

 
25 O.S. 301, 
Short Title
Discussed

 
25 O.S. 302, 
Public Policy
Discussed

 
25 O.S. 311, 
Public Bodies - Notice
Discussed

 
25 O.S. 313, 
Actions Taken in Willful Violation of Act
Discussed

Title 69. Roads, Bridges, and Ferries

 
Cite
Name
Level

 
69 O.S. 1701, 
Purpose - Authority to Construct, Maintain, Repair and Operate Projects
Cited

 
69 O.S. 1705, 
Authority - Powers and Duties
Cited

 
69 O.S. 1704, 
Definitions - Authority to Contract or Lease Concessions
Discussed

 
69 O.S. 1703, 
Oklahoma Turnpike Authority - Corporate Body - Instrumentality of State - Liabilities - Members - Officers - Surety Bonds - Compensation
Cited

 
69 O.S. 1718, 
Judicial Determination of Validity of Bonds
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA