SNOW v. TOWN OF CALUMET
2022 OK 63
Case Number: 119748
Decided: 06/21/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 63, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STEVE SNOW and KACI SNOW, Plaintiffs/Appellants,
v.
TOWN OF CALUMET OKLAHOMA, Defendant/Appellee,
ON APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY
Honorable Paul Hesse, Trial Judge
¶0 Landowners sued the Town of Calumet for trespass and inverse condemnation due to maintaining two municipal sewer lines across the owners' property after the expiration of two temporary easements. The town counterclaimed to quiet title. Both parties moved for summary judgment. The district court granted the landowners' motion for summary judgment on the town's quiet-title claim and granted the town's motion for summary judgment on the landowners' claims for trespass and inverse condemnation. The landowners appealed the district court's judgment on their inverse condemnation claim. This Court retained the appeal. We reverse the district court's judgment, holding the landowners have standing to assert an inverse condemnation claim, and we remand for trial. 
DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED FOR TRIAL ON INVERSE CONDEMNATION CLAIM.
Sean C. Wagner, Wagner Hicks, PLLC, Charlotte, North Carolina, for Plaintiffs/Appellants.
Joseph P. Weaver and Jana L. Knott, Bass Law, El Reno, Oklahoma, for Defendant/Appellee.
Winchester, J.
¶1 The limited issue before this Court is whether Appellants Steve Snow and Kaci Snow (the Snows) have standing to assert a claim for inverse condemnation against the Town of Calumet (Town), Oklahoma. We answer this question in the affirmative. Town's temporary easements for sewer lines installed by Town on the Snows' property expired in 2010, and Town then sought perpetual easements without compensation from the Snows for the continual use and maintenance of the sewer lines. Under these facts, the Snows have standing to assert a claim for inverse condemnation.
FACTS AND PROCEDURAL HISTORY
¶2 In June 2010, the Snows purchased real property located in Town. The former owners of the real property had granted temporary easements to Town in 1978 to install and maintain two municipal sewer lines located on the Snows' property. The temporary easements expired in December 2010.
¶3 In May 2018, over seven years after the easements expired, Town requested that the Snows execute perpetual easements for Town's continued use and maintenance of the sewer lines. The Snows sought compensation from Town for the easements, but Town declined to compensate the Snows.
¶4 The Snows filed this action against Town for trespass and inverse condemnation. Town filed a counterclaim seeking to quiet title to the easements by prescription. Both parties filed motions for summary judgment. The district court granted in part the Snows' motion for summary judgment on Town's quiet title claim, holding the municipal sewer lines were permissive until the temporary easements expired in 2010 and Town had not satisfied the statutory period of fifteen years for prescriptive easements. The district court also granted Town's motion for summary judgment on the Snows' claims for trespass and inverse condemnation. The district court held that Town was entitled to judgment as a matter of law on the Snows' trespass claim because the former owners of the property consented to Town entering the property and installing the sewer lines. As to the Snows' inverse condemnation claim, the district court held that the Snows lacked standing to assert an inverse condemnation claim because the right to this claim belonged to the former owners of the property when Town installed the sewer lines in 1978. The Snows appealed the district court's judgment regarding their inverse condemnation claim. We retained the appeal.
STANDARD OF REVIEW
¶5 Summary judgment resolves issues of law, and we review a district court's grant of summary judgment de novo. U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005--4 v. Alexander, , ¶ 13, , 939. Using the de novo standard, we subject the record to a new and independent examination without regard to the trial court's reasoning or result. Gladstone v. Bartlesville Indep. Sch. Dist. No. 30, , ¶ 5, , 446. The Court has plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings. State ex rel. Protective Health Servs. State Dep't of Health v. Vaughn, , ¶ 9, , 1064. All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing summary judgment. U.S. Bank, , ¶ 13, 280 P.3d at 939. If reasonable individuals could reach different factual conclusions under the evidentiary materials, summary judgment is improper. Id.
DISCUSSION
¶6 The Oklahoma Constitution guarantees that private property will not be taken or damaged for public use without just compensation. Okla. Const. art. 2, § 24. When a governmental entity takes or damages private property without just compensation, a person may bring an inverse condemnation claim. State ex rel. Dep't of Transp. v. Post, , ¶ 7, , 1186. The essential elements of an inverse condemnation claim are (1) a taking of property for public use by a governmental entity that has the power of eminent domain, and (2) a failure to tender just compensation. Drabek v. City of Norman, , ¶ 4, , 659. We construe our State constitutional eminent domain provisions "strictly in favor of the owner and against the condemning party." Bd. of Cty. Comm'rs of Muskogee Cty. v. Lowery, , ¶ 11, , 646.
¶7 The general rule is that the right of inverse condemnation belongs to the owner at the time of the taking. Cox Enters., Ltd. v. Phillips Petroleum Co., , ¶ 9, , 1326. The two exceptions that the Court has recognized are when (1) the current property owner had no knowledge that the taking occurred, and (2) the former property owner did not consent to the taking and transferred the right to recover just compensation for the taking to the current property owner. Drabek, , ¶ 17, 946 P.2d at 662.
¶8 Town argues that the Snows have no standing to allege inverse condemnation because they did not own the property at the time Town installed the sewer lines and no exception to this rule applies here. However, the Snows' right to bring an inverse condemnation claim here is distinguishable from the cases this Court decided where the owners of the properties attempted to recover for a taking that occurred when the former owners owned the properties. See, e.g., Drabek, , ¶ 17, ; Cox Enters., Ltd., , ¶ 12, 550 P.2d at 1326-27; Consol. Gas Serv. Co. v. Tyler, , ¶ 40, , 91. The Snows' inverse condemnation claim did not accrue until after the temporary easements granted by the former property owners expired.
¶9 Town's temporary easements granted by the former property owners when Town installed the sewer lines were limited to the particular purpose for which they were created. Story v. Hefner, , ¶ 13, , 566. (holding easements are grants of limited land use subject to certain established rules of law). Town's right to utilize the land ended when the temporary easements expired in 2010, which is demonstrated by Town's own actions in seeking perpetual easements from the Snows in May 2018. When Town sought perpetual easements from the Snows for the continued use and maintenance of the sewer lines more than seven years after the temporary easements expired, the Snows owned the property, giving them standing to allege an inverse condemnation claim.
¶10 The fact that Town previously installed the sewer lines in 1978 and requested temporary easements from the former property owners is not determinative of whether the Snows currently have a claim for inverse condemnation. More than one taking can occur involving a single piece of property. See, e.g., Natural Gas Pipeline Co. of Am. LLC v. Foster OK Res. LP, , ¶ 20, , 1212 (allowing a condemnation claim for additional easements to operate and maintain two interstate natural gas pipelines after the initial taking of private property). Actual physical possession is not a condition in determining whether a taking took place. Post, , ¶ 11, 125 P.3d at 1187. A taking can occur when a governmental entity with the right to eminent domain overtly exercises dominion and control over private property, including when a governmental entity seeks an easement for the use of private property. Mattoon v. City of Norman, , ¶ 12, , 1349; Graham v. City of Duncan, , ¶ 18, , 461.
¶11 The Court has also held that just compensation for a taking is determined as of the time a taking occurs. Okla. Turnpike Auth. v. Burk, , ¶ 13, , 1005. Town now seeks perpetual easements, which will restrict the Snows' property for an unlimited duration of time. The just compensation for a grant of a perpetual easement may be considerably different from the compensation for a grant of a temporary easement. The Snows therefore have a right to claim inverse condemnation for Town's permanent use of their property that exceeds the use Town previously had under its temporary easements. Whether Town's request for perpetual easements for the continued use and maintenance of the sewer lines located on the Snows' property constitutes a taking without just compensation is a question that must still be decided.
¶12 The Snows contend on appeal that they are entitled to summary judgment on the question of whether a taking has occurred, with the issue of just compensation being reserved for a determination by a jury at the trial on this matter. In an action for inverse condemnation, the issue of taking is critical and is a fact question that, unless confessed, must be tried to a jury. Carter v. City of Okla. City, , ¶¶ 14-15, , 81. If a taking occurred, a jury then determines just compensation for the landowner. Id. The burden of proving a taking occurred is on the property owner. Inc. Town of Pittsburg v. Cochrane, , ¶ 0, , 288 (Syllabus of the Court) (upholding rule in an inverse condemnation action that a plaintiff bears the burden of proof on all issues "that lie at the foundation of the . . . proceedings"). If a taking occurred by Town in seeking perpetual easements for the continued use and maintenance of the municipal sewer lines, a jury must also determine just compensation for the Snows. This case is therefore remanded for a trial on the issues of whether a taking occurred and just compensation for the taking.
CONCLUSION
¶13 The Snows have standing to assert an inverse condemnation claim. Town's right to utilize the land ended when the temporary easements expired in 2010. Town sought perpetual easements from the Snows for the continual use and maintenance of the sewer lines. The Snows requested just compensation for the Town to continue to utilize the land, but Town refused to compensate the Snows. Accordingly, we hold that the district court erred in granting summary judgment to Town, holding that the Snows did not have standing to assert an inverse condemnation claim. We remand the cause for further proceedings.
DISTRICT COURT'S JUDGMENT REVERSED AND REMANDED FOR TRIAL ON INVERSE CONDEMNATION CLAIM.
ALL JUSTICES CONCUR. 
FOOTNOTES
 Perpetual Easement, Black's Law Dictionary (11th ed. 2019), available at Westlaw.
 We reach this conclusion based on the long line of decisions holding that the taking issue in an inverse condemnation case is a question for the jury. See, e.g., Post, , ¶ 7, 125 P.3d at 1186; Oxley v. City of Tulsa, By and Through Tulsa Airport Auth., , ¶ 15, , 745 (issue of de facto taking in inverse condemnation case "is a jury question"); Mattoon, , ¶ 10, 617 P.2d at 1349 (petition alleging compensable taking not demurrable); Henthorn v. Okla. City, , ¶¶ 14--15, , 1016 (trial court did not err in submitting the question of taking to the jury in inverse condemnation case); Atchison, T. & S. F. Ry. Co. v. Terminal Oil Mill Co., , ¶ 6, , 619; Foster Lumber Co. v. Ark. Valley & W. Ry. Co., , ¶ 7, , 228.