OSCN Found Document:JOHNSON v. BROWN

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 JOHNSON v. BROWN
2024 OK CIV APP 18
Case Number: 120813
Decided: 03/27/2024
Mandate Issued: 07/11/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 18, __ P.3d __

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT. 

BETTY JOHNSON; BARBARA SMOLA; RUTH CROCKET; JANICE BAKO; and KAYE FIFE, Trustee of the Lillian Kaye Fife Revocable Trust Dated 9-27-2017, both individually and derivatively on behalf of Brown, Brown, Wood and Schoelen, Inc., an Oklahoma Corporation, Plaintiffs/Appellants,
v.
BROWN, BROWN, WOOD, AND SCHOELEN, INC., an Oklahoma Corporation, Nominal Defendant,
v.
JOYCE K. BROWN, Trustee of the Joyce Brown Trust Dated 12-31-92, and as Trustee of the Dorsey N. Brown Trust Dated 12-31-92, Defendant/Third-Party Plaintiff/Appellee,
v
GLORIA SHADID and STEVE WOOD, Third-Party Defendants/Appellants,
and
SHARLENE TIPKEN; JANE LAFALIER, individually; THE LAVONNE AND HARVEY BROWN LIVING TRUST, U/D/A 10/24/08; RODNEY CHARLES BROWN; RHONDA LEE BROWN LIVING TRUST DATED 07/16/09; and THE MASSEY FAMILY TRUST AGREEMENT DATED 08/20/01, Third-Party Defendants.
APPEAL FROM THE DISTRICT COURT OF
KINGFISHER COUNTY, OKLAHOMA
HONORABLE PAUL WOODWARD, TRIAL JUDGE
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS
Joseph P. Titterington, DAVIS BUSINESS LAW, PLLC, Oklahoma City, Oklahoma, for Plaintiffs/Appellants
Michael D. Roberts, ROBERTS LAW OFFICE, Enid, Oklahoma,
Erin J. Rooney, GUNGOLL, JACKSON, BOX & DEVOLL, P.C., Oklahoma City, Oklahoma, for Nominal Defendant
and
Julia C. Rieman, GUNGOLL, JACKSON, BOX & DEVOLL, P.C. Enid, Oklahoma, for Defendant/Third-PartyPlaintiff/Appellee,
Jeremy K. Ward, FRANDEN, FARRIS, QUILLIN GOODNIGHT, ROBERTS + WARD, Tulsa, Oklahoma, for Third-Party Defendants/Appellants Gloria Shadid and Steve Wood
Matthew K. Felty, LYTLE SOULÉ & FELTY, P.C., Oklahoma City, Oklahoma, for Third-Party Defendant/Appellee The Lavonne and Harvey Brown Living Trust U/D/A 10/24/08
Camille N. Burge, Fred A. Leibrock, PHILLIPS MURRAH, P.C., Oklahoma City, Oklahoma, for Third-Party Defendant/Appellee Massey Family Trust Dated 08/20/01
JANE P. WISEMAN, PRESIDING JUDGE:
¶1 Betty Johnson, Barbara Smola, Ruth Crocket, Janice Bako, and Kaye Fife, Trustee of the Lillian Kaye Fife Revocable Trust dated 9/27/2017, individually and derivatively on behalf of Brown, Brown, Wood and Schoelen, Inc. (collectively, Plaintiffs), appeal from trial court orders (1) granting summary judgment in favor of Defendant and Third-Party Plaintiff Joyce K. Brown, as Trustee of the Joyce Brown Trust Dated 12/31/1992, and as Trustee of the Dorsey N. Brown Trust dated 12/31/1992, and (2) granting attorney fees to Defendant. Third-Party Defendants Gloria Shadid and Steve Wood also appeal the order granting summary judgment in favor of Defendant. This appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S.2021, ch. 15, app. 1, and stands submitted without additional briefing. The issue presented is whether the trial court erred in finding no material undisputed fact questions remain and that Defendant is entitled to judgment as a matter of law, and secondarily, whether the trial court properly granted attorney fees to Defendant in the wake of the summary judgment. After review, we conclude it was error to grant summary judgment in favor of Defendant and Third-Party Plaintiff, and we reverse the summary judgment and the attorney fee order.
FACTS AND PROCEDURAL HISTORY
¶2 Plaintiffs filed a petition and subsequent amended petitions. In their last (third) amended petition, Plaintiffs state Brown, Brown, Wood and Schoelen, Inc. (BBWS) is a closely held corporation formed in Oklahoma in 1982. They allege that, at least as early as December 1990, of the 1200 outstanding shares of voting stock, each of the four siblings, Dona Jean Schoelen, Vivian L. Wood, Harvey Leon Brown, and Dorsey N. Brown, owned 300 voting shares in BBWS and each sat on the board of directors. Plaintiffs claim that as each sibling passed away, a member of their respective immediate families replaced them on the board of directors. They allege:
[F]or thirty (30) years, from at least as early as December 1990 until the shareholders' meeting held in March 2021, board members were not elected by the shareholders. Instead, each of the four families who descended from the Original Shareholders selected one of their own family members to sit on the board. This course of conduct was approved and adopted by those who were shareholders during this period. This modification of the Bylaws allowed each family to select a board member and thereby insured that each family would have equal representation on [the] board and an equal say in the affairs of BBWS.
¶3 As voting shares were acquired or transferred by various family members, the Dorsey Brown Trust and the Joyce Brown Trust controlled 650 of the 1200 voting shares of BBWS. Plaintiffs allege that at the shareholders' meeting in March 2021, the attorney for these trusts asserted that they were entitled to elect all four board members and he proceeded to nominate four adult children of Dorsey and Joyce Brown to the board of directors who were then elected. The result was the elimination of directors from the other three families.
¶4 Plaintiffs sought a declaratory judgment that BBWS's "Bylaws have been modified by a course of conduct which the shareholders of BBWS agreed to and adopted over the past thirty (30) plus years." They also asked for a declaratory judgment providing, "That pursuant to said course of conduct, membership on BBWS's board of directors is not to be subject to a vote of the shareholders but, rather, by each family holding shares in BBWS being allowed to select one person to sit on the board." Plaintiffs asked the trial court to declare that the election of the existing board of directors is void, all their actions "were unauthorized, improper, void, and in contravention of the Bylaws, as modified," and that a new election must be held.
¶5 Defendant filed an answer, counterclaim, and third-party petition, naming as third-party defendants the following BBWS shareholders: Gloria Shadid, Steven Wood, Sharlene Tipken, Jane Lafalier, the Lavonne and Harvey Brown Living Trust, U/D/A 10/24/08, Rodney Charles Brown, Rhonda Lee Brown Living Trust Dated 07/16/09, and the Massey Family Trust Agreement Dated 08/20/01. For its counterclaim and third-party petition, Defendant sought a declaratory judgment that the stock transfers by the Massey Trust and the Lavonne Brown Trust did not violate BBWS's Stock Restriction Agreement and that BBWS's bylaws require the directors "to be elected by the owners and holder [sic] of the voting shares of stock in BBWS."
¶6 Defendant filed a motion for summary judgment. We will quote and summarize below the facts Defendant alleges to be undisputed. Plaintiffs admitted the majority of Defendant's undisputed facts. Each of the following facts is admitted by Plaintiffs unless specifically indicated otherwise. BBWS was formed and incorporated in Oklahoma in 1982. Defendant states, "Neither the Articles of Incorporation nor the Amended Certificate of Incorporation": (1) "contains a restriction on the sale or transfer of BBWS's stock"; (2) "provides for more or less than one vote for any share on any matter"; or (3) "modif[ies] the statutory procedure for electing members of the board." BBWS's Bylaws were adopted on August 10, 1982.
¶7 Although Defendant claims that the original Bylaws are still BBWS's current bylaws, Plaintiffs claim that at the March 10, 2012 shareholders' meeting, "Plaintiff Barbara Smola moved that the four seats on the Company's board of directors consist of a member from each of the families of the four 'Original Shareholders.' The motion was seconded and approved without objection." Plaintiffs also claim that at the March 10, 2013 annual meeting of BBWS's board of directors:
a proposal was made to amend Article III, Section 1 with regard to the selection of members of its board of directors. According to the minutes of that meeting "[t]he amendment would read that there are to be four directors, one director from each family of Harvey Brown, Dorsey Brown, Vivian Wood, and Dona Schoelen. Steve Wood motioned to approve the measure with Lavonne Brown seconding the motion. All Directors approved the motion."
¶8 BBWS's Bylaws do not restrict the sale or transfer of its stock. Article II of the Bylaws provides that the annual shareholders' meeting must be held every year on the second Tuesday of March at 10:00 a.m., but a special meeting may be called, as allowed by law, by the president or the board of directors. Shareholders may consent to action without a meeting.
¶9 Article III of the Bylaws titled "Board of Directors" provides that the board shall be comprised of four members elected by the shareholders at the annual meeting and who hold office until their successors have been elected and qualified at the next annual meeting. The board's meeting is held immediately following and at the same location as the shareholders' meeting. The Bylaws also allow for special meetings and action without a meeting under delineated circumstances.
¶10 The Bylaws at Article VI, Section 3, provide:
Amendments to By-Laws
. -- These By-Laws may be altered, amended or repealed by the shareholders or by the Board. Any By-Law adopted, amended or repealed by the shareholders may be amended or repealed by the Board, unless the resolution of the shareholders adopting such By-Law expressly reserves to the shareholders the right to amend or repeal it.
¶11 When BBWS was formed, the four original individuals each owned 300 shares of voting stock, amounting to 25% each of the outstanding shares: Dona Jean Schoelen, Vivian L. Wood, Harvey Leon Brown, and Dorsey N. Brown. In December 1990, these four individuals entered into an Agreement for Restriction on Alienation of Stock, which provides that "before any common voting or non-voting stock of BBWS could be transferred to an individual or organization that was not an existing shareholder (i.e., an 'outsider'), the stock had to be offered first to the corporation to be purchased as treasury shares and second to the existing shareholders." The stock could be transferred to an "outsider" if neither BBWS nor the existing shareholders decided to purchase the stock.
¶12 As of September 1, 2020, conveyances of the stock resulted in the following owners holding the stock: (1) Betty Johnson, Barbara Smola, Ruth Crocket, Janice Bako, the Lillian Kaye Revocable Trust dated 9/27/2017, and the Massey Family Trust Agreement Dated 9/20/01 (Massey Trust) each owned 50 shares or 4.166666% of the outstanding shares of voting stock, (2) Gloria Gail Shadid, Steven Mark Wood, Jane Marie LaFalier, Sharlene Sue Tipken each owned 75 shares or 6.25% of the outstanding shares of voting stock, (3) the Lavonne and Harvey Brown U/D/A 10/24/08 owned 300 shares or 25% of the outstanding shares of voting stock, and (4) the Joyce Brown Trust and the Dorsey Brown Trust each owned 150 shares or 12.5% of the outstanding shares of voting stock.
¶13 "On or about September 2, 2020, the Massey Family Trust transferred all of its right, title and interest in and to all of its voting stock including, but not limited to, 50 voting shares represented by Certificate 43 as well as 183.33 non-voting shares represented by Certificate 44 to the Joyce Trust (the 'Massey Trust Transfer')." The Lavonne and Harvey Brown Living Trust (the Lavonne Trust) on or about November 10, 2020, "transferred all of its right, title, and interest in and to all of its voting stock including, but not limited to, 300 voting shares represented by Certificate 26 as well as 600 non-voting shares represented by Certificate 27 to the Joyce Trust." Also, on or about November 10, 2020, Rodney Charles transferred to the Joyce Trust all his right, title, and interest in and to 250 non-voting shares in a transaction represented by Certificates 10 and 17. The Rhonda Lee Brown Living Trust transferred 250 non-voting shares represented by Certificate 28 to the Joyce Trust on or about November 10, 2020.
¶14 Certificates Nos. 10, 17, 26, 27, 28, 43, and 44 "conspicuously note[] the Restrictions on Alienation as Reflected by a Meeting of the Board of Directors held on December 21, 1990 . . . . No other Restrictions on Alienation are noted on [any of the certificates]."
¶15 As a result of the transfers, as of November 11, 2020, the holders of the 1200 shares of voting stock were: (1) Betty Johnson, Barbara Smola, Ruth Crocket, Janice Bako, and the Lillian Kaye Revocable Trust dated 9/27/2017, each owned 50 shares of voting stock or 4.166666%; (2) Gloria Gail Shadid, Steven Mark Wood, Jane Marie LaFalier and Sharlene Sue Tipken, each owned 75 shares of voting stock, or 6.250000%; (3) the Joyce Trust, 500 shares of voting stock, or 41.66666%, and (4) the Dorsey Trust, 150 shares of voting stock, or 12.50000%.
¶16 The BBWS annual meeting was held on or about March 27, 2021, in Kingfisher, Oklahoma. Defendant claims that before this meeting, both the Massey Trust and the Lavonne Trust provided shareholder proxies to the Joyce Trust. Plaintiffs, however, claim that these alleged proxies were not produced at the meeting. The following appeared either personally or through a representative at the 2021 meeting: the Joyce Trust, the Dorsey Trust, the Lillian Kaye Revocable Trust dated 09/27/2017, Betty Johnson, Barbara Smola, Ruth Crocket, Janice Bako, Gloria Shadid, Steven Wood, Jane LaFalier and Sharlene Tipken.
¶17 Nominations for directors were opened at the 2021 meeting. Although Plaintiffs admit that the nominations were opened, they "contend that such nominations violated the 2012 shareholder agreement and Article III, Section 1 of the Amended Bylaws." Neal Brown, Vicky Brown, Sherry Gassen, and Connie Holthus were nominated at the 2021 meeting to serve as BBWS's directors. At that meeting, the Dorsey Trust and the Joyce Trust, who were "collectively owners and holders of 650 (54.16666%) of the issued and outstanding shares of voting stock in [BBWS], voted to appoint Connie Holthus, Sherry Gassen, Neal Brown, and Vicky Brown" and they were elected on this basis.
¶18 At the annual meeting held on or about March 8, 2022, in Kingfisher, Oklahoma, the following appeared either personally or through a representative: the Joyce Trust, the Dorsey Trust, The Lillian Kaye Revocable Trust dated 09/27/2017, Betty Johnson, Barbara Smola, Ruth Crocket, Janice Bako, Gloria Shadid, Steven Wood, Jane LaFalier and Sharlene Tipken.
¶19 Defendant claims that before the 2022 meeting, both the Massey Trust and the Lavonne Trust provided shareholder proxies to the Joyce Trust. Plaintiffs, however, claim that these alleged proxies were not produced at the meeting. Defendant claims nominations for directors were opened at the 2022 annual meeting. Plaintiffs admit that the nominations were opened, but they assert the nominations violated Article III, Section 1 of the Amended Bylaws. Neal Brown, Vicky Brown, Sherry Gassen, and Connie Holthus were nominated to serve as directors of BBWS at the meeting. The Joyce Trust and the Dorsey Trust, owners of 650 voting shares (54.16666%), voted for Neal Brown, Vicky Brown, Sherry Gassen, and Connie Holthus and they were elected to serve on the board of directors of BBWS. Plaintiffs admit the vote was taken, but they contend the vote violated Article III, Section 1 of the Amended Bylaws.
¶20 In Plaintiffs' statement of additional undisputed facts, they contend each plaintiff is a shareholder of BBWS. They claim that at the 2021 shareholder meeting, "The first order of business was the nomination of the Schoelen family representative to the Company's board of directors." Before the nomination was considered, the attorney acting on behalf of Defendant announced that Defendant held the proxies to vote 300 voting shares held by Lavonne Brown and 50 voting shares held by the Massey Family Trust, but the attorney did not produce the proxies. In response to Plaintiffs' statement, Defendant disputes that the proxies were not presented.
¶21 The attorney then nominated Defendant's four children to become board members, voted Defendant's shares in favor of her children, and declared them to be the four board members. Plaintiffs and BBWS's president, Steve Wood, objected to the election.
¶22 In support of their response to the motion for summary judgment, Plaintiffs submitted the affidavit of Steve Wood, stating that after the death of BBWS's original shareholders, a member of each respective family was selected to sit on its board of directors. He states, "Notwithstanding Article III, Section 1 of the initial Bylaws, it had always been the custom of the Company's shareholders to allow each of the families of the Original Shareholders to appoint a member of their respective families to its board of directors." The custom was in place "to allow each family to have a say in the Company's business." Wood also stated:
At the annual meeting of the Company's shareholders held on March 10, 2012, Barbara Smola moved to amend the Bylaws to formalize this custom and to thereby require that the four seats on the board of directors consist of a member from each of the four families. I seconded the motion and moved that each family needed to select which family member to represent them on the board. The motion passed without objection. I also indicated that it would require a vote of the board to adopt the proposed amendment.
The minutes of the shareholders' 2012 meeting were attached as an exhibit. Wood further stated:
At the meeting of the Company's board of directors held on March 10, 2013, a proposal was made to amend Article III, Section 1 with regard to the selection of members of its board of directors. According to the minutes of that meeting: "[t]he amendment would read that there are to be four directors, one from each family of Harvey Brown, Dorsey Brown, Vivian Wood, and Dona Schoelen. Steve Wood motioned to approve the measure with Lavonne Brown seconding the motion. All Directors approved the motion."

The minutes of the 2013 shareholders' meeting were attached as an exhibit. Wood also details the events of the 2021 election for the board of directors.
¶23 Defendant filed a reply and a motion to strike Steve Wood's affidavit alleging it is a sham because Wood "improperly attempt[ed] to manufacture factual disputes by presenting: self-serving statements regarding the ultimate issue of the case; presenting statements that are speculation and mere belief, which are not acceptable evidence; and presenting self-serving statements that are contradicted by the acceptable and competent evidence in the summary judgment record."
¶24 Third-Party Defendants Gloria Shadid, Steve Wood, and Jane LaFalier filed a response to Defendant's motion for summary judgment. Unlike Plaintiffs, these Third-Party Defendants did not admit the majority of Defendant's undisputed facts. They admitted that BBWS was formed and incorporated in Oklahoma in 1982. Although they admitted that in the Articles of Incorporation or Amended Certificate of Incorporation there were no restrictions on the sale or transfer of BBWS stock, citing a different affidavit from Steve Wood filed as an exhibit to the Third-Party Defendants' response, they claim that "[t]here were restrictions on alienation through other agreements." These Third-Party Defendants admitted that neither the Articles of Incorporation nor the Amended Certificate of Incorporation modified the statutory procedure for electing members of the board, but they claim that "[t]he Bylaws were amended to alter the procedure for electing members of the board." They admit BBWS's bylaws were adopted on August 10, 1982, but deny "that the 1982 Original Bylaws are the current bylaws of BBWS." Third-Party Defendants claim the Bylaws were amended in 2012 to require that the four board of directors' seats must be held by one family member from each of the four original shareholders.
¶25 Although Third-Party Defendants agree that the Bylaws do not restrict the sale or transfer of BBWS stock, they claim that "[t]here were restrictions on alienation through other agreements."
¶26 Third-Party Defendants did not dispute that, when BBWS was formed, Dona Jean Schoelen, Vivian L. Wood, Harvey Leon Brown, and Dorsey N. Brown each owned 300 shares of voting stock or 25% of the outstanding shares. They also admit that in December 1990, the original shareholders entered into an Agreement for Restriction on Alienation of Stock which required "that the common-voting or non-voting stock of BBWS had to first be offered to the corporation to be purchased as treasury shares and second to existing shareholders." But they denied Defendant's claims regarding the restriction on alienation of stock:
to the extent that the restriction only applied when the transfer was to a non-existing shareholder or "outsider." The Stock Restriction Agreement, adopted in December of 1990, clearly states that the shareholders only included the Original Shareholders. On November 12, 2017, the directors discussed the interpretation of the Stock Restriction Agreement, and the minutes provide that "[a]ll board members agreed that the intention of the original four children were [sic] that the stock remain in the family, preferably in the ¼ family split. Joyce Brown was present at this meeting. Furthermore, and most importantly, Rhonda Brown admitted in her email dated August 14, 2020 that the Stock Restriction Agreement required all shares to be offered to the corporation first, as a right of first refusal, then to the shareholders, before stock could simply be purchased by an individual shareholder from another family unit. Despite Rhonda's written statements acknowledging the stock restriction, and discussing her positions with her mother, her mother moved forward with knowingly disregarding all of the restrictions and sold her shares in violation of the Stock Restriction Agreement.
(Citation to the record omitted.) Third-Party Defendants cite not only the Steve Wood affidavit, but the board of directors' meeting notes from November 12, 2017, which state:
ITEM 7A&B. -- UNIT TRANSFER RESTRICTIONS AND UPDATE OF UNIT HOLDERS--Barbara Smola has asked for some clarity on the selling or gifting of shareholder stock. The bylaw's [sic] only cover selling stock. All board members agreed that the intentions of the original four children were that the stock remain in the family, preferably in the ¼ family split. Steve Wood agreed to contact the corporate attorney to see what needs to be done to amend the transfer guidelines.
The August 14, 2020, Rhonda Brown email states:
Steve, FYI--Mother and John Massey talk all the time and today her [sic] told her that he offered his stock to Joyce who has made him an offer.
He has the agreement for restriction on alienation of stock, I sent it to him around a year ago and has talked to his lawyer. I have read the restriction and it says he has to first, alert the corporation about the offer and let the corporation have the ability to make an offer. Then if BBWS says no, he has to notify all of the shareholders and offer it to them for offered price or more.
We don't really want more stock than we have, but also do not want to be held hostage either. If the company buys the stock, I assume it would need to borrow money for the pay out and then it would be divided among the remaining shareholders. The problem I see with BBWS buying, then who's to say that others won't want to sell. If your family and Mother joined up to purchase we would control more than 50% and it would not matter who else wanted to sell, but we might get in a bidding war with Joyce. . . .
¶27 Third-Party Defendants denied that the Agreement does not have a restriction that limits one existing shareholder's ability to transfer stock to another existing shareholder. They assert, "The Stock Restriction Agreement only included the Original Shareholders, meaning the four original families of BBWS." They point to Brown's email as evidence that the shares had to be offered first to BBWS.
¶28 Third-Party Defendants do not dispute the stock was transferred by the Massey Trust, the Lavonne Trust, Rodney Charles Brown, and the Rhonda Lee Brown Living Trust, but they allege the transfers were improper.
¶29 They admit that the BBWS annual meeting was held on or about March 27, 2021, in Kingfisher, Oklahoma. They deny that the Joyce Trust provided shareholder proxies for the Massey Trust and the Lavonne Trust because the proxies were not produced at the 2021 and 2022 shareholder meetings. Third-Party Defendants admit that the nominations of Neal Brown, Vicky Brown, Sherry Gassen, and Connie Holthus and the vote on the nominations occurred at both the 2021 and 2022 shareholders' meetings, but they contend the nominations were improper pursuant to the Amended Bylaws. They also contend the votes were improper because "the Joyce Trust and Dorsey Trust were not the proper owners and holders of 650 (54.16666%) of the issued and outstanding shares of voting stock in BBWS." They assert "that the vote was not based upon an affirmative vote of a majority of the voting shareholders and the vote violated the Amended Bylaws."
¶30 After considering the arguments of the parties, the trial court granted summary judgment in favor of Defendant but denied the motion to strike Steve Wood's affidavits.
¶31 Defendant then filed a motion for attorney fees seeking $51,604.50 in fees pursuant to 18 O.S. § 1126, which addresses prevailing party attorney fee awards in derivative actions. The trial court ordered Plaintiffs to pay Defendant $51,604.50 in attorney fees.
¶32 Plaintiffs appeal from both orders and Third-Party Defendants appeal from the summary judgment order.
[1]
STANDARD OF REVIEW
¶33 "The appellate standard of review in a motion for summary judgment is de novo." Serra v. Estate of Broughton, 2015 OK 82, ¶ 16, 364 P.3d 637. "Using the de novo standard, we subject the record to a new and independent examination without regard to the district court's reasoning or result." Cherokee Nation v. Lexington Ins. Co., 2022 OK 71, ¶ 8, 521 P.3d 1261. "All inferences and conclusions are to be drawn from the underlying facts contained in the record and are to be considered in the light most favorable to the party opposing summary judgment." Snow v. Town of Calumet, 2022 OK 63, ¶ 5, 512 P.3d 369. "Summary judgment is improper if, under the evidentiary materials, reasonable individuals could reach different factual conclusions." U.S. Bank, N.A. ex rel. Credit Suisse First Boston Heat 2005-4 v. Alexander, 2012 OK 43, ¶ 13, 280 P.3d 936.
ANALYSIS
¶34 After review, we conclude issues of material fact remain in dispute and it was error to grant summary judgment in favor of Defendant. Because we conclude Defendant was not entitled to judgment as a matter of law, we must also reverse the award of attorney fees to Defendant.

I. Material Issues of Fact Remain in Dispute that Preclude Summary Judgment.

¶35 Although Plaintiffs list numerous assertions of error on appeal, the dispositive issue is whether material issues of fact remain in dispute that preclude summary judgment as a matter of law. After review of the record in this accelerated appeal, we conclude that it was error to grant summary judgment because material issues of fact remain in dispute regarding whether the Bylaws were amended by course of conduct.
¶36 Plaintiffs alleged in their third amended petition that on the death of each of the four original sibling BBWS shareholders, a member of their respective families replaced them on the board. According to Plaintiffs, "for thirty (30) years, from at least as early as December 1990 until the shareholders' meeting held in March 2021, board members were not elected by the shareholders" but "[i]nstead, each of the four families who descended from the Original Shareholders selected one of their own family members to sit on the board." Plaintiffs allege, "This course of conduct was approved and adopted by those who were shareholders during this period." The modified "Bylaws allowed each family to select a board member and thereby insured that each family would have equal representation on [the] board and an equal say in the affairs of BBWS."
¶37 In her motion for summary judgment, Defendant points to the Bylaws' provision that the board shall be comprised of four members to be elected at the annual meeting by the shareholders and who hold office until their successors have been elected and qualified at the next annual meeting. Defendant asserts that the 2021 and 2022 nominations and elections complied with the Bylaws.
¶38 In response to Defendant's motion for summary judgment, Plaintiffs presented Steve Wood's affidavit which the trial court declined to strike as Defendant urged in her motion to strike. Wood served as president of BBWS and was not a plaintiff in this lawsuit but was brought in as a Third-Party Defendant by Defendant. Wood testified regarding the 30-year custom of allowing a family member of each of the original shareholders to hold a seat on the board and a shareholder's 2013 motion to amend the Bylaws to formalize the custom. Plaintiffs attached the minutes of the 2012 shareholders' meeting addressing the amendment formalizing the custom of allowing a family descendant from each original shareholder to hold one of the four seats on the board of directors. Wood also testified that at the 2013 board of directors' meeting, an amendment to the Bylaws was proposed to change Article III, Section 1 of the Bylaws to read "there are to be four directors, one director from each family of Harvey Brown, Dorsey Brown, Vivian Wood, and Dona Schoelen." All Directors approved the motion. The minutes of the shareholders' 2012 meeting were attached as an exhibit as well as the minutes from the 2013 board of directors' meeting.
¶39 At the very crux of the lawsuit lies the question of whether the Bylaws were amended by a course of conduct. Defendant proffered evidence showing that the nomination and election of the board of directors complied with the original Bylaws and Plaintiffs produced evidence to show that the original Bylaws were amended by a course of conduct allowing each family a say in BBWS's business. We conclude Plaintiffs have shown there is a disputed issue of fact as to whether there was a custom or course of conduct as to how board members are elected that amended the Bylaws.
¶40 The existence of a question of fact under these circumstances is only material if under Oklahoma law, corporate bylaws can be amended or altered through a course of conduct. Although we have encountered no Oklahoma case law directly on point on this issue, a review of case law from other jurisdictions, including cases cited by Plaintiffs below, leads this Court to conclude that bylaws are subject to amendment by course of conduct in Oklahoma.
¶41 "The function of a 'by--law' is to prescribe the rights and duties of the members with reference to the internal government of the corporation, the management of its affairs, and the rights and duties existing between the members inter se." Cummings v. State, 1915 OK 334, ¶ 0, 149 P. 864 (syl. no. 5 by the Court). Other states have found that corporate bylaws may be amended by course of conduct. For example, in In re Osteopathic Hospital Association of Delaware 195 A.2d 759, 762 (Del. 1963), the Court explained that Delaware "courts have long held that bylaws may be amended or established by custom or by acquiescence in a course of conduct by those authorized to enact them." One of those decisions on which the Osteopathic Hospital Association Court relied was In re Ivey & Ellington, 42 A.2d 508, 509 (Del. Ch. 1945), which held:
Ordinarily, a corporate by-law may be amended by implication and without any formal action being taken by clear proof of a definite and uniform custom or usage, not in accord with the by-laws regularly adopted, and by acquiescence therein; but usually the course of conduct relied on to effect the change must have continued for such a period of time as will justify the inference that the stockholders had knowledge thereof and impliedly consented thereto.
Ivey further instructed, "Unanimous consent by the stockholders to a regular course of action, inconsistent with the by-laws regularly adopted, may, therefore, justify the conclusion that an amendment thereto was intended." Id. at 510.
¶42 Oklahoma's corporate law is derived from the corporate law of Delaware. See Woolf v. Universal Fidelity Life Ins. Co., 1992 OK CIV APP 129, ¶ 6, 849 P.2d 1093. "It is a settled rule that where one state adopts a statute from another, it is presumed to adopt the construction placed upon the statute by the highest court of the other state." Bank of the Lakes v. First State Bank, 1985 OK 81, ¶ 9, 708 P.2d 1089.
¶43 In Hernandez v. Banco De Las Americas, 570 P.2d 494, 497--98 (Ariz. 1977), the Arizona Supreme Court held: "It is accepted law that by-laws may be amended informally as well as formally, orally or in writing . . . by acts as well as by words, and may be evidenced by a course of proceeding or conduct on the part of the corporation inconsistent with the by-laws claimed to have been amended or repealed." In Schraft v. Leis, 686 P.2d 865, 872 (Kan. 1984), the Kansas Supreme Court held that the shareholder parties on both sides of the lawsuit had waived the use of the bylaws. Citing "18 Am.Jur.2d, Corporations § 173, pp. 703--04," the Court said, "Corporations have power to waive provisions of their bylaws introduced for the protection of the company, and they may do so expressly or impliedly. Corporate bylaws may also be waived by a continued disregard thereof by the parties for whose benefit they were enacted." Schraft, 686 P.2d at 868 (syl. no. 2 by the Court).
¶44 We find these cases pertinent and persuasive when viewed in conjunction with Oklahoma contract law. We conclude that pursuant to Oklahoma law, corporate bylaws are subject to alteration or amendment by course of conduct. The Oklahoma Supreme Court has instructed, "It is patent that the by-laws of a voluntary association constitute a contract between the members . . . . By-laws of associations may be amended in compliance with provisions thereof governing amendments." Oklahoma Ass'n of Ins. Agents v. Hudson, 1963 OK 199, ¶ 7, 385 P.2d 453.
¶45 Oklahoma law provides, "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." 15 O.S.2021 § 237. "It is axiomatic that parties to an existing valid contract may, by mutual consent and consideration, modify the contract." National Interstate Life Ins. Co. v. Thomas, 1981 OK 71, ¶ 30, 630 P.2d 779. "When parties orally agree to an alteration of a written contract, and such contract, as amended, is carried out, this constitutes, as to such amended matters, an executed oral contract." Pfeiffer v. Peppers Ref. Co., 1946 OK 280, ¶ 11, 173 P.2d 581. Oklahoma law also recognizes that course of conduct may alter a contract. See, e.g., Oklahoma Improved Seed Co. v. Smith, 1935 OK 1083, ¶ 0, 51 P.2d 563 (syl. no. 2 by the Court)(where one party to a contract, through his or her course of conduct leads another to believe "that such performance will not be required, until it has become too late to perform, the party who has so conducted himself is barred from asserting the right he had").
¶46 Plaintiffs assert that the shareholders agreed to modify the Bylaws by course of conduct and by specifically agreeing to a method of selecting board members. Specifically, in opposition to the motion for summary judgment, Plaintiffs presented the notes from the 2012 shareholders' meeting which stated that "it was decided last year for the representative of each family to start with oldest and continues in age order each year." These notes support Plaintiffs' claim that a representative previously had been chosen from each family to sit on the board and that the shareholders agreed to further restrictions on how board members were chosen from each family. We conclude that Plaintiffs presented evidence raising an issue of material fact as to whether the Bylaws were amended by the parties' course of conduct.
¶47 Title 18 O.S.2021 § 1013(A) provides in part:
After a corporation . . . has received any payment for any of its stock, except as otherwise provided in its certificate of incorporation, the power to adopt, amend or repeal bylaws shall be in the shareholders entitled to vote. . . . Notwithstanding the foregoing, any corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors . . . . The fact that such power has been so conferred upon the
directors . . . shall not divest the shareholders . . . nor limit their power to adopt, amend or repeal bylaws.
This is consistent with Article VI § 3 of the BBWS Bylaws and authorizes the shareholders to do what they did at the March 10, 2021 meeting. The "course of conduct" analysis fills in the omitted provision in the amendment that each family, not the shareholders, gets to select that family's board representative.
¶48 Because material issues of fact remain regarding whether, as urged by Plaintiffs, the Bylaws were amended by course of conduct, it was error to grant summary judgment in favor of Defendant.

II. Third-Party Defendants Raised Issues of Fact Regarding Stock Transfer Restrictions.

¶49 Defendant sought a declaratory judgment in its Third-Party Petition regarding the stock transfers. It claims there was no restriction on the certificates transferring stock. Third-Party Defendants denied this assertion and countered that there was a Stock Restriction Agreement requiring that stock first be offered to the corporation before being transferred to another existing shareholder. They assert, "The Stock Restriction Agreement only included the Original Shareholders, meaning the four original families of BBWS." They point to Rhonda Brown's email as evidence that the shares had to be offered first to BBWS. They also point to notes from the 2017 board of directors' meeting showing all the directors "agreed that the intention of the original four children in making the agreement was 'that the stock remain in the family, preferably in the ¼ family split.'"
¶50 The "Agreement for Restriction on Alienation of Stock" provides that the original four sibling shareholders agreed "that all common stock voting and non-voting of [BBWS] shall not be transferred to any person or organization that is not currently a holder of voting common shares of stock of [BBWS] until" three conditions were met: (1) the stock is offered back to BBWS, (2) if BBWS decides not to purchase the stock, an identical offer is made to each of the shareholders, and (3) if "any [shareholder] or [shareholders] elects to purchase, then they shall purchase a pro-rata share of said stock." If no shareholder decides to purchase, then after 30 days, the stock can be sold to a bona fide purchaser. The Agreement provides that the restrictions do not apply to spouses or lineal descendants.
¶51 We conclude it was error for the trial court to grant summary judgment to Defendant and declare as a matter of law that the stock transfers were proper. Third-Party Defendants presented sufficient evidence to raise a question of fact regarding the propriety of those transfers, thus precluding summary judgment in Defendant's favor on this issue.

III. Attorney Fees

¶52 Because we reverse the summary judgment in Defendant's favor, we must also reverse the award to Defendant of attorney fees. The statute pursuant to which Defendant sought attorney fees provides in relevant part:
In any derivative action instituted by a shareholder of a domestic or foreign corporation, the court having jurisdiction, upon final judgment, shall require the nonprevailing party or parties to pay the prevailing party or parties the reasonable expenses, including attorney fees, taxable as costs, incurred as a result of such action. 
18 O.S.2021 § 1126(C). Because we conclude that Defendant is not entitled to judgment as a matter of law, she is no longer entitled to attorney fees as the prevailing party.
CONCLUSION
¶53 Because genuine issues of material fact remain in dispute, it was error to grant summary judgment as a matter of law. We reverse the summary judgment and the subsequent attorney fee award and remand the case for further proceedings.
¶54 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. 
BARNES, C.J., and FISCHER, J., concur.
FOOTNOTES
[1] Third-Party Defendants the Massey Family Trust Agreement Dated 08/20/2001 and the Lavonne and Harvey Brown Living Trust U/D/A 10/24/08 filed responses to the petitions in error stating that the District Court's judgment should be affirmed. Nominal Defendant BBWS also filed a response to the petitions in error stating that both the order granting summary judgment and the order awarding attorney fees should be affirmed.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA